HARRY S. POSNER *et al.*, Plaintiffs-Appellees, *v.* SANDER A. DAVIS *et al.*, Defendants-Appellants.

First District (1st Division)   No. 78-1833

Opinion filed September 17, 1979.

Peterson, Ross, Schloerb & Seidel, of Chicago (Russell M. Pelton, Jr., and F. Dennis Nelson, of counsel), for appellants.

Fred S. Posner, of Chicago, for appellees.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

Harry S. Posner and Diane M. Posner, plaintiffs, sued Sander A. Davis and Pearl E. Davis, defendants, for fraudulently concealing certain defects in a house in Evanston, which plaintiffs purchased from defendants in 1973. The alleged defects included basement flooding, rotted basement stairs, roof leakage and water-soaked and rotted plaster. After a bench trial, defendants were found guilty of fraud and judgment was entered for plaintiffs for $3,500. Defendants appeal, arguing that (1) plaintiffs failed to prove fraud and (2) the evidence did not support the award of $3,500.

Sander Davis testified that during the eight to 10 years prior to the sale the basement had flooded whenever there was a heavy rain, the flooding sometimes reaching three inches. After the water receded, defendants would have to wash and mop the basement. He also testified that approximately one year to 18 months before the house was sold to plaintiffs, he hired a roofer to deal with a leakage problem in the main roof. Sander Davis admitted that at the time of the sale this leakage had caused part of a third-floor bedroom wall to rot. In addition, he testified

that the porch roof had leaked prior to the sale. He stated that he had never told plaintiffs about any of these defects.

Plaintiffs testified that after purchasing the house from defendants they owned it for approximately 10 months before selling it in May 1974. During that time, the basement flooded on at least six occasions, and in a few instances the water contained fecal matter. The water would usually take a day to a day and one-half to recede, after which plaintiffs had to mop and clean the basement. Plaintiffs also found that the bottom basement stair had rotted due to flooding.

Plaintiffs further testified that the main roof leaked, causing part of a third-floor bedroom wall to rot. This leakage also caused part of the bedroom's ceiling to fall after plaintiffs had begun occupying the house. In addition, plaintiffs stated that the porch roof leaked and that water seeped into the ceiling of the dining room, which was adjacent to the porch.

Defendants contend that plaintiffs failed to prove fraud by clear and convincing evidence. (See *Ray v. Winter* (1977), 67 Ill. 2d 296, 367 N.E.2d 678.) On June 8, 1973, plaintiffs entered into a contract to purchase defendants' home in Evanston. The sale was closed on July 25, 1973. Plaintiffs testified that the only statement either defendant made to them concerning any of the defects in the house took place on June 13, 1973, when Sander Davis allegedly told Harry Posner that defendants had never had a basement flooding problem. Defendants maintain that this alleged statement by Sander Davis, which at trial he denied having made, was plaintiffs' only evidence of fraud and that plaintiffs could not have relied on it when they entered into the real estate sales contract on June 8, 1973, because plaintiffs concede the statement was not made until five days later. Thus, defendants argue, plaintiffs failed to prove that when they purchased the house they detrimentally relied on a fraudulent statement or act by defendants concerning any of the defects, and that the judgment against them was against the manifest weight of the evidence, because detrimental reliance is an essential element of fraud. Defendants also argue that it is unlikely plaintiffs believed they had been defrauded, because plaintiffs did not file their complaint in this action until January 2, 1975, approximately 17 months after plaintiffs had begun occupying the house and eight months after plaintiffs had sold it.

Plaintiffs contend that, if the seller of a house at any time prior to closing misrepresents its condition, that misrepresentation may be the basis for a fraud action by a buyer who relied on it when closing the sale; that Sander Davis' alleged misrepresentation concerning basement flooding was made on June 13, 1973; that the closing was not until July 25, 1973, and that plaintiffs detrimentally relied on Sander Davis'

misrepresentation when they closed the sale. Because of the conclusion we have reached, we need not consider this contention.

Plaintiffs argue that in addition to the misrepresentation by Sander Davis, there was clear and convincing evidence that defendants actively concealed the defects from plaintiffs prior to entering into the sales contract and that this constitutes fraud. We agree.

Both plaintiffs and defendants testified that defendants never told plaintiffs about the basement flooding problem. Plaintiffs also testified that the real estate broker did not inform them of the flooding. Furthermore, Sander Davis admitted he never advised the broker about the flooding or instructed the broker to inform prospective buyers of this condition.

In addition, plaintiffs and defendant Pearl Davis testified that plaintiffs made two visits to the house on a day shortly before June 8, 1973, the date of the sales contract. Harry Posner stated that on the first visit plaintiffs inspected the entire house, and Pearl Davis testified that Harry Posner examined the basement on this visit. Sander Davis testified that the main room in the basement had a tile floor and that flooding had, in part, caused some of the tiles there to flake and crack. He admitted he had removed many of these flaked and cracked tiles and had placed a large rug over the area where the tiles had been removed. This rug covered the entire floor of the main room in the basement, except for an approximately one foot border of intact tile extending around the room between the rug and the walls. Whenever the basement had flooded, defendants had taken the rug outside to dry, but Sander Davis admitted that the rug was never drying outside when plaintiffs visited the house. Moreover, Sander Davis admitted he never told plaintiffs that tiles under the basement rug were flaking and cracking, or that he had removed some of the tiles because of this damage. Sander Davis also testified that no watermarks were visible on the basement walls, and that the basement stairs were completely carpeted.

Harry Posner testified that on one occasion when the basement flooded after plaintiffs had moved into the house, he had to lift the carpet covering the bottom basement step in order to discover that the step had rotted and that water was seeping through there into the basement. In addition, Diane Posner stated that the flooding problem prompted plaintiffs to sell the house.

Sander Davis also testified that when the main roof leakage had caused plaster in part of the third-floor bedroom wall to rot, he had covered the damaged area with a vinyl fabric which was "maintainable and aesthetically acceptable." Also, Harry Posner testified that when he visited the house, both prior to and after entering into the contract, he saw nothing to indicate there was any problem with roof leakage. He further

testified that it was not until sometime after plaintiffs had occupied the house that he placed his hand against the vinyl covering on the third-floor bedroom' wall and discovered that main roof leakage had caused a substantial amount of plaster underneath to become wet and crumble. In addition, plaintiffs testified that defendants and the broker never told them about the roof leakage, and Sander Davis admitted he never said anything to plaintiffs about this problem.

Finally, Harry Posner testified that when plaintiffs purchased the house, they relied on the fact defendants did not disclose anything about basement flooding or roof leakage. He also testified plaintiffs would not have bought the house if they had known about these conditions.

■■ In *Russow v. Bobola* (1972), 2 Ill. App. 3d 837, 841, 277 N.E.2d 769, a suit involving active concealment of basement flooding in a house, the court stated:

> "* * * Silence accompanied by deceptive conduct or suppression of material facts results in active concealment, and it then becomes the duty of a person to speak. In such case, if a party to a contract of sale does not disclose the whole truth, having the requisite intent to deceive, this amounts to fraud equally with an affirmative falsehood. * * *"

The evidence here is clear and convincing that when plaintiffs entered the contract to purchase defendants' home, they relied to their detriment on silence and conduct by defendants which resulted in active concealment of both the fact that there had been basement flooding which had caused the floor tiles to flake and crack and which had caused the bottom basement step to rot, and also the fact that there had been main-roof leakage which had damaged the plaster wall of the third-floor bedroom. Defendants testified that they did not intend to conceal these conditions from plaintiffs by silence or by the rug they had placed on the basement floor or by the vinyl with which they had covered the bedroom wall. However, their silence so resulted. A party is considered to intend the necessary consequences of his own acts or conduct. 37 Am. Jur. 2d, *Fraud and Deceit* §158 (1968).

■■ Defendants argue that Sander Davis' alleged misrepresentation was the only evidence on which the trial court relied in finding fraud. We disagree, because the record discloses that the court also stated that the evidence showed defendants had a "duty to speak." This can be construed to be a finding of active concealment as to the basement flooding and main roof leakage. In addition, in a bench trial as here, "[n]o special findings of fact or propositions of law are necessary to support the judgment or as a basis for review in a non-jury case [citation]; and the appellee is permitted to endeavor to sustain the judgment of the trial court by any argument, for any reason, and upon any basis in the record

showing that the judgment was proper." (*Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 1022, 327 N.E.2d 346. See Ill. Rev. Stat. 1977, ch. 110A, par. 366(b)(3)(i).) The evidence here sustains the finding of fraud. The fact that plaintiffs did not file suit until January 2, 1975, does not militate against the finding of fraud.

Plaintiffs also argue that, although silence alone, absent the existence of a confidential relationship, generally does not amount to fraud (see *Shockley v. Ryder Truck Rental, Inc.* (1979), 74 Ill. App. 3d 89, 392 N.E.2d 675), and that the rule that liability for fraud ordinarily cannot be based on silence alone has been a corollary to the traditional doctrine of *caveat emptor*, the modern trend in the law regarding the sale of a home is away from strict adherence to the doctrine of *caveat emptor*. In *Petersen v. Hubschman Construction Co.* (1979), 76 Ill. 2d 31, 389 N.E.2d 1154, for example, our supreme court held that there is an implied warranty of fitness with the sale of a new house by a builder-vendor, and stated that the existence of such a warranty helped avoid "the harshness of *caveat emptor*." 76 Ill. 2d 31, 38.

■■ The amelioration of the doctrine of *caveat emptor* in a number of other jurisdictions has resulted in a used-home seller being liable for failing to disclose material defects of which he was aware at the time of sale. This view is succinctly expressed in *Lingsch v. Savage* (1963), 213 Cal. App. 2d 729, 735, 29 Cal. Rptr. 201, 204:

> "It is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer."

(See also *Lawson v. Citizens & Southern National Bank* (1972), 259 S.C. 477, 193 S.E.2d 124; *Obde v. Schlemeyer* (1960), 56 Wash. 2d 449, 353 P.2d 672.) We are of the opinion, in view of our supreme court's amelioration of the doctrine of *caveat emptor* in *Petersen*, that this should also be the law in Illinois with reference to the sale of used homes.

The evidence clearly shows defendants knew of and failed to disclose that there had been problems with basement flooding and with main and porch roof leakage, and Harry Posner testified that plaintiffs would not have bought the house if they had known about the basement flooding or roof leakage. The finding of fraud on the part of defendants was correct.

Defendants' second contention is that plaintiffs' evidence did not support the award of $3,500 as damages. We agree.

■■ A defrauded purchaser is entitled to damages which will give him the

"benefit of his bargain." Thus, the measure of damages for fraudulently concealing defects in property is the value the property would have had at the time of sale if the defects did not exist, less the value the property actually had at the time of sale due to the defects. See *Ginsburg v. Bartlett* (1931), 262 Ill. App. 14; 19 Ill. L. & Prac. *Fraud* §53 (1956).

■■ Much of plaintiffs' evidence on damages dealt with either the value the house had at the time when plaintiffs sold it, or with the amount of profit they would have made if the defects in the house had not existed. This particular evidence was not relevant to the question of plaintiffs' damages. Instead, the actual value of the house and the value it would have had without the defects should have been determined as of the date plaintiffs purchased the house from defendants. Plaintiffs did state that they purchased the house for $130,000. This may have been sufficient evidence of the value the house would have had when it was sold to plaintiffs if the defects had not existed. (37 Am. Jur. 2d *Fraud and Deceit* §353 (1968).) However, no evidence was presented concerning the value the house actually had with the defects at the time plaintiffs purchased it.

■■ ■ An alternative measure of damages for fraudulent concealment is the cost of fixing the property to make it conform to the condition it would have had without the defects. (37 Am. Jur. 2d *Fraud and Deceit* §357 (1968).) Such evidence may also be probative of the value the property actually had at the time of sale. (37 Am. Jur. 2d *Fraud and Deceit* §357 (1968).) Plaintiffs did submit as evidence certain repair bills which they paid to have the defects fixed, and also testified that they themselves had to spend time cleaning the basement after it had flooded. However, the record is somewhat confusing concerning the amount plaintiffs paid to correct the defects, because plaintiffs also submitted evidence of expenditures they made for repairs and improvements to the house which had nothing to do with the complained-of defects. The record also shows that no attempt was made to place a value on the time plaintiffs themselves spent in dealing with the defects.

Absolute certainty concerning the amount of damage is not necessary to justify a recovery where the existence of damage is established; the evidence need only tend to show a basis for the computation of damages with a fair degree of probability. (*DeKoven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 327 N.E.2d 378.) However, "damages may not be predicated on mere speculation, hypothesis, conjecture or whim." *DeKoven Drug Co. v. First National Bank* (1975), 27 Ill. App. 3d 798, 802, 327 N.E.2d 378.

■■ The record does not indicate any basis for the trial court's assessment of $3,500 damages. Plaintiffs' evidence concerning damages was confusing and much of it was based on an incorrect assumption concerning the

proper measure of relief for fraudulent concealment. The award of $3,500 is reversed and the cause is remanded for an evidentiary hearing on damages.

The judgment of the circuit court of Cook County is affirmed as to defendants' liability and reversed and remanded for a new trial as to damages.

Affirmed in part and reversed and remanded in part.

GOLDBERG, P. J., and McGLOON, J., concur.