967 F.2d 249
 EQUITY CAPITAL CORPORATION, a Delaware Corporation,
Individually and as Successor to Kreider Truck Service,
Incorporated, a merged Illinois Corporation, Joseph R.
Behnken, Individually and as Trustee of the Joseph R.
Behnken Revocable Living Trust, and Linda Behnken,
Plaintiffs-Appellees,
v.
KREIDER TRANSPORTATION SERVICE, INCORPORATED, a Texas
Corporation, and Western Commercial Transport,
Incorporated, a Texas Corporation,
Defendants-Appellants.
 No. 91-1922.
 United States Court of Appeals,
Seventh Circuit.
 Argued Dec. 9, 1991.
Decided July 20, 1992.
Rehearing and Rehearing En Banc
Denied Dec. 15, 1992.
 
 Harry J. Sterling (argued), Sterling, Stanley & Kelley, Fairview Heights, Ill., for plaintiffs-appellees.
 Robert Tucker, Evans & Dixon, Edwardsville, Ill., and Mack E. Swindle (argued) and Thomas F. Harkins, Jr., Gandy, Michener, Swindle, Whitaker & Pratt, Ft. Worth, Tex., for defendants-appellants.
 Before POSNER, COFFEY, and FLAUM, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Equity Capital Corporation and its principals (together "Equity") brought this diversity suit against Kreider Transportation Service, Inc. and Western Commercial Transport, Inc. (together "Kreider") for breach of contract. The terms of the contract, a sales agreement, provided that Equity would transfer to Kreider the assets of its trucking company, including real and personal property and interstate operating authorities, for approximately $2.5 million. Equity transferred the assets, but Kreider paid only a portion of the purchase price, and Equity sued to recover the balance. After a four-day trial, the jury found for Equity, and the district court denied Kreider's post-trial motions. Equity Capital Corp. v. Kreider Transp. Serv., Inc., No. 88-3134 (S.D.Ill. Mar. 22, 1991). On appeal, Kreider contends that it is entitled to judgment notwithstanding the verdict because it owes Equity nothing, and, in the alternative, to a new trial because the district court did not tender jury instructions on Kreider's fraudulent inducement defense. We apply Illinois law here, consider each contention in turn, and affirm.
 
 I.
 
 2
 One of the two properties Kreider purchased from Equity is a trucking terminal located in Decatur, Illinois. Prior to the sale, the most important customer at the terminal was A.E. Staley Manufacturing Company ("Staley"), and Kreider naturally wanted to keep the Staley account once it took over the business from Equity. The sales agreement accordingly contained a clause providing that, in the event Equity's "rights and benefits" under the Staley contract were not "assignable" to Kreider, the terminal would not be transferred and the gross purchase price would be reduced by $300,000. We refer to this as the "assignment clause," and place its operative terms in quotes because they do not quite reflect all that the sales agreement aimed to accomplish. When one sells a business as a going concern, and also plans to transfer the business's long-term contracts to the buyer, the transfer involves not only an assignment of "rights and benefits," but also a delegation of duties. E. Allan Farnsworth, Contracts § 11.1, at 780 (2d ed. 1990). This inartful drafting, however, is of no moment, for sales agreements that purport to "assign" rights also delegate duties if the parties' intent to do so is clear from the circumstances, id. § 11.10, at 824, as it is here.
 
 
 3
 Equity and Kreider closed their deal on December 23, 1986. Equity's contract with Staley, however, had expired two days earlier on December 21, and Staley opted not to renew. According to Kreider, the fact that the Staley contract had ceased to exist meant that Equity could not have possibly "assigned" to Kreider its rights thereunder. As such, Kreider contends that the purchase price it owes Equity should be reduced by $300,000, pursuant to the assignment clause. It further contends that since this reduction is greater than the $291,666.67 Equity sought in its lawsuit, the district court should have granted Kreider judgment notwithstanding the verdict.
 
 
 4
 In diversity cases from Illinois, judgment notwithstanding the verdict is appropriate only when all the evidence and inferences drawn therefrom, viewed in the light most favorable to the non-movant, so overwhelmingly favor the movant that no contrary verdict can stand. See F.W. Hempel & Co. v. Metal World, Inc., 721 F.2d 610, 613 (7th Cir.1983). The evidence at trial clearly demonstrates that Kreider did not meet its burden here. Dana King, Kreider's principal and chief negotiator, testified on direct examination that he knew that the Staley contract was due to expire sometime in December, and further that he had authorized Joseph Behnken, Equity's principal, to submit a bid to Staley on Kreider's behalf to renew the contract. King also testified that Kreider performed on Equity's old Staley contract for about two months following the contract's official expiration.
 
 
 5
 From this testimony, a reasonable jury could have concluded that Equity met its obligations under the assignment clause. The clause provided, in relevant part, that in the event "the rights and benefits of [Equity] under the terms of its shipping contract with [Staley] shall not be assignable by [Equity] to [Kreider], then" the Decatur terminal would not be transferred and the purchase price reduced accordingly. Pl.'s Ex. 1 (emphasis added). The clause did not indicate which Staley contract was at issue--the old Staley contract, or the new contract which Equity was pursuing on Kreider's behalf--but Kreider does not prevail under either interpretation. Assume for the moment that the parties meant the old contract. Although that contract had officially expired on December 21, 1986, Staley continued to adhere to the contract's terms until the following February, when it finally transferred its patronage to the trucking concern awarded the new contract. Kreider, which serviced the Staley account from December 23 until that time, therefore performed whatever obligations and received whatever "rights and benefits" remained under the old contract.
 
 
 6
 It is more likely that the parties meant the new Staley contract, for Kreider would have been foolish to stake the continued success of the Decatur terminal on a service contract nearing its end. This interpretation of the assignment clause still leaves open the question of what exactly Equity promised thereunder. The jury, in resolving this ambiguity, was entitled to look to extrinsic circumstances--in particular, the fact that Kreider was fully aware of the state of Equity's relationship with Staley, and also the fact that Kreider had positioned itself appropriately by authorizing Equity to submit a new bid on its behalf. Borg-Warner Corp. v. Anchor Coupling Co., 16 Ill.2d 234, 156 N.E.2d 513, 516 (1958); Wald v. Chicago Shippers Ass'n, 175 Ill.App.3d 607, 125 Ill.Dec. 62, 71, 529 N.E.2d 1138, 1147 (1988); see generally Farnsworth, supra, §§ 7.12-7.13. With these things in mind, the jury could have read the clause as conditioning the transfer of the Decatur property on Equity's ability to assign and delegate whatever rights and duties it would obtain under the new Staley contract if in fact Equity won that contract. Under that reading, Kreider took its chances and lost. Kreider could have protected itself by conditioning the transfer upon Equity's actually being awarded the new Staley contract. Its failure to do so had severe economic consequences, but does not excuse it from satisfying its end of the bargain.
 
 II.
 
 7
 Kreider also contends that the district court erred by not submitting jury instructions on its fraudulent inducement defense. The alleged fraud relates to the other piece of real estate, located in Markum, Illinois, transferred by Equity to Kreider. Apparently, an excess amount of "fill" caused a substantial grading problem at the property, placing it out of compliance with certain zoning ordinances enacted by Markum. Correcting the zoning violation, Kreider tells us, would entail extensive excavation work and cost a great deal of money. Kreider was not aware of the defect when it signed the sales agreement because Behnken, who negotiated on behalf of Equity, did not disclose the defect to King, who, recall, negotiated for Kreider. Kreider argues that Behnken, by omitting this material information, committed a fraud during the negotiations--or at least a jury could so conclude; accordingly, the district court should have instructed the jury that Kreider did not have to comply with the contract if it was fraudulently induced into signing. The court's decision not to do so, Kreider contends, entitles it to a new trial. We review the district court's denial of Kreider's motion for a new trial for an abuse of discretion. Blumenfeld v. Stuppi, 921 F.2d 116, 118 (7th Cir.1990).
 
 
 8
 Under Illinois law, a party fraudulently induced into signing a contract is, as a general matter, entitled to rescind the deal. Wilkinson v. Appleton, 28 Ill.2d 184, 190 N.E.2d 727, 729-30 (1963); Chapman v. Hosek, 131 Ill.App.3d 180, 86 Ill.Dec. 379, 384, 475 N.E.2d 593, 598 (1985); see generally Farnsworth, supra, § 4.10, at 250. To rescind an otherwise valid contract on this ground, one must prove the elements of fraud, which are several. Central States Joint Bd. v. Continental Assurance Co., 117 Ill.App.3d 600, 73 Ill.Dec. 107, 110, 453 N.E.2d 932, 935 (1983) (listing elements). Only one element is relevant here: the making of a false statement of material fact. Illinois courts at times consider a party's failure to disclose material information (i.e., omission) to be a false statement of fact, but only if the alleged defrauder owed a duty to disclose that information to the party across the bargaining table. Id.; FDIC v. W.R. Grace & Co., 877 F.2d 614, 619 (7th Cir.1989), cert. denied, 494 U.S. 1056, 110 S.Ct. 1524, 108 L.Ed.2d 764 (1990). The district court held that Equity owed Kreider no duty to disclose the zoning violations at the Markum property, a holding that eliminated Kreider's chances of proving that it was fraudulently induced into signing the contract. Kreider disagrees and argues that Equity had such a duty. The question of whether it did presents a issue of law, which we review de novo. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).
 
 
 9
 In resolving this question, we look first to the express language of the sales agreement. Braeside Realty Trust v. Cimino, 133 Ill.App.3d 1009, 89 Ill.Dec. 25, 27, 479 N.E.2d 1031, 1033 (1985); Monti v. Tangora, 99 Ill.App.3d 575, 54 Ill.Dec. 732, 737-38, 425 N.E.2d 597, 602-03 (1981). It provided that Equity would convey "good and marketable title ... free of any and all encumbrances except Permitted Exceptions," and further that "[z]oning ordinances ... shall be deemed to be Permitted Exceptions." Equity interprets these provisions as having released it from any obligation to inform Kreider of zoning violations at the Markum property. Kreider offers no contrary interpretation, and in fact ignores the provisions altogether, which we take as a concession that Equity's reading is correct. In Illinois, provisions such as these govern the rights and obligations of the parties to real estate contracts, Monti, 54 Ill.Dec. at 737-38, 425 N.E.2d at 602-03, and consequently Equity was under no duty to volunteer information regarding the grading problems. As such, its omission does not constitute a misrepresentation of material fact sufficient to support a jury finding of fraudulent inducement.
 
 
 10
 This would end matters but for Kreider's allegation that Behnken not only failed to disclose the zoning violations, but also lied when asked point blank about them. Specifically, King testified at trial that when he asked Behnken if there was anything wrong at the Markum property, Behnken "said to his knowledge, there wasn't any problems [sic] with it, that everything was fine...." The fact that a party owes no duty to disclose particular facts does not give it license to lie when asked point blank about those facts. See Astor Chauffeured Limousine Co. v. Runnfeldt Inv. Corp., 910 F.2d 1540, 1550 (7th Cir.1990) (discussing Illinois cases). This legal principle is qualified in that the lie, to ground an action in fraud, must be in the form of a statement of fact, not an expression of opinion. West v. Western Casualty and Surety Co., 846 F.2d 387, 393 (7th Cir.1988); Marino v. United Bank of Illinois, N.A., 137 Ill.App.3d 523, 92 Ill.Dec. 204, 206, 484 N.E.2d 935, 937 (1985); Duhl v. Nash Realty Inc., 102 Ill.App.3d 483, 57 Ill.Dec. 904, 910, 429 N.E.2d 1267, 1273 (1981).
 
 
 11
 As a threshold matter, then, we must determine whether Behnken's statement to King was a statement of fact or an opinion. Under Illinois law, "a representation is one of opinion rather than fact if it only expresses the speaker's belief, without certainty, as to the existence of a fact." Marino, 92 Ill.Dec. at 206, 484 N.E.2d at 937. That Behnken preceded his statement with the qualification "to [my] knowledge" made it an opinion, in contrast to an affirmative representation that the Markum property was problem-free. See Buttitta v. Lawrence, 346 Ill. 164, 178 N.E. 390, 393 (1931). Because opinions are not actionable in fraud, Behnken's statement is not sufficient to ground a jury finding of fraudulent inducement.
 
 
 12
 Our disposition of this issue comports with Illinois' policy of strictly following the rule of caveat emptor in arm's-length real estate transactions, Bezin v. Ginsburg, 59 Ill.App.3d 429, 16 Ill.Dec. 595, 603, 375 N.E.2d 468, 476 (1978), particularly when the non-disclosed information is readily ascertainable by the alleged victim at a reasonable cost. Lenzi v. Morkin, 103 Ill.2d 290, 82 Ill.Dec. 644, 645, 469 N.E.2d 178, 179 (1984); Posner v. Davis, 76 Ill.App.3d 638, 32 Ill.Dec. 186, 190, 395 N.E.2d 133, 137 (1979). In this case, the grading situation at the Markum property was available for all to observe; in fact, a Kreider employee took photographs of the property after being so instructed by his employer. Cf. Posner, 32 Ill.Dec. at 190, 395 N.E.2d at 137 (home sellers actively concealed flood damage in basement from buyers). Kreider could have easily determined that the Markum property was out of compliance with the village's zoning ordinances, which of course are a matter of public record.
 
 
 13
 Behnken's equivocal answer to King's question regarding problems at the Markum property, on top of the exception for zoning ordinances in the sales agreement, put Kreider on notice that it had better check out the grading situation itself. The fact that it failed to do so could not, as a matter of law, have rendered Equity's representations (or lack thereof) regarding the Markum property fraudulent, and hence the district court properly did not tender an instruction on fraudulent inducement to the jury.
 
 
 14
 AFFIRMED.