THE CITY OF CHICAGO, Plaintiff-Appellant, v. MICHIGAN BEACH HOUSING COOPERATIVE *et al.*, Defendants-Appellees.

First District (3rd Division)    No. 1—96—0646

Opinion filed June 10, 1998.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Thomas J. Bamonte, Assistant Corporation Counsel, of counsel), for appellant.

Donald A. Tarkington and Timothy G. Compall, both of Novack & Macey, of Chicago, for appellee Michigan Beach Limited Partnership.

Torshen, Spreyer & Garmisa, Ltd., of Chicago (Jerome H. Torshen and Zoran Dragutinovich, of counsel), for other appellees.

JUSTICE CAHILL delivered the opinion of the court:

The City of Chicago appeals the trial court's grant of summary judgment for defendants on misrepresentation and breach of contract claims against defendants. We affirm summary judgment for all defendants on counts I and II of the city's complaint. We also affirm summary judgment for defendant Michigan Beach Housing Cooperative (Cooperative) on count II of its counterclaim. We affirm summary judgment for defendant Cincinnati Mortgage Corporation (CMC) on count III of the city's complaint, but reverse summary judgment for the remaining defendants on count III and remand.

The facts underlying this case are set out in *City of Chicago v. Michigan Beach Housing Cooperative*, 242 Ill. App. 3d 636, 609 N.E.2d 877 (1993) (*Michigan Beach I*). After *Michigan Beach I* was decided the trial court allowed the city to file a third amended complaint incorporating theories not resolved in the first appeal. We here summarize only those facts necessary to resolve the issues appealed.

In 1988, under a reorganization plan devised by Jayson Investments, Inc. (Jayson), the city loaned the Cooperative $3,295,230 to transform a high-rise rental apartment building into a cooperative. Before dispersing the loan, the city required written certification that 50% to 70% of the cooperative units had been sold. ICF Development Corporation (ICF) was hired to sell the units.

Defendant Ida Fisher, president of ICF, provided a sworn statement that "the 51% presale requirement of cooperative memberships [had] been satisfied as of the date of closing." Documents purporting to show who had bought the units were attached. The parties executed a promissory note and the city received a junior mortgage on the Michigan Beach property. Under the note, repayment is not due for 42 years from the date of the junior mortgage. Annual interest payments are to be paid only from "surplus cash." The terms of the mortgage prohibit the city from foreclosing without the consent of the senior mortgagee. CMC held the senior mortgage on a United States Department of Housing and Urban Development (HUD) co-insured loan.

On May 16, 1989, the developers informed the city's housing commissioner by letter that the cooperative project was not economically viable. The developers said, "[o]n the basis of recent audits, it is clear that the building was never 51% presold and that in fact the actual presale number was probably less than 20%. As a result, the building is more than $1,200,000 behind projections at this time and there is no way for it to make up lost ground." The developers asked the city to issue tax credits that the developers would then market to raise money. The developers said that if the city did not issue tax credits, "the present cooperative unit owners of the building will lose in excess of $250,000 and the City will lose its entire $3,300,000 loan."

The city continued to disburse money under the loan until mid-July 1989. In July 1989, the city also awarded $300,000 of low-income housing tax credits to Michigan Beach Limited Partnership (MBLP), an entity created by the developers to acquire title to the building from the Cooperative.

The developers then sought to convert the project back into low-income rental housing and to syndicate the tax credits granted by the city. The city objected to the conversion of the project to low-income rental housing, but did not rescind the tax credits. The property was

later transferred from the Cooperative to Jayson, and then to MBLP, and the tax credits were syndicated. MBLP paid $1,065,600 on the senior mortgage under an agreement with HUD. In return, HUD agreed not to consent to an attempt by the city to foreclose on the property. As of June 12, 1991, the Michigan Beach property was converted back into a low-income rental project.

In July 1991, HUD sanctioned the city by deducting $1,383,240 from the city's grant of HUD rental rehabilitation program funds. This penalty was the amount of city loan funds HUD determined had been spent on items not eligible for reimbursement with rental rehabilitation program funds under HUD regulations. See 24 C.F.R. § 511.10(f) (1997). HUD claimed that city loan funds had been used to pay ineligible expenses, including a developer service fee, a marketing fee, organization expenses and financing-related expenses.

In an earlier appeal of this case, we reviewed the dismissal of counts I through V of the city's first amended complaint. *Michigan Beach I*, 242 Ill. App. 3d 636, 609 N.E.2d 877. In counts I through V, the city sought to accelerate payments under the city's note and to recover syndication proceeds, alleging that the syndication was an event of default under the mortgage. We affirmed the dismissal. We held that the city waived the right to declare default based on the syndication when it subsequently issued tax credits. We also held that the city was not entitled to recover syndication funds as collateral.

The city now appeals summary judgment granted to defendants on a third amended complaint and count II of MBLP's counterclaim. Counts I and II of the city's third amended complaint allege that the city is entitled to damages resulting from the developers' fraudulent (count I) or negligent (count II) misrepresentations that more than 50% of the cooperative units were presold. Count III alleges that CMC, MBLP, Jayson, and the Cooperative breached their agreements to ensure that city loan proceeds were spent only on expenses eligible for rental rehabilitation reimbursement. Count IV alleges that the developers and the Cooperative fraudulently transferred the project from the Cooperative to MBLP to prevent the city from obtaining a remedy for fraud. Count V alleges a conspiracy to fraudulently transfer the assets of the Cooperative to MBLP to deprive the city of a meaningful remedy. The city did not appeal summary judgment on count IV or V.

Count II of MBLP's counterclaim alleges that the city is obligated to advance the last $110,295 of the loan to MBLP.

The city filed a motion for summary judgment on counts I through III of its complaint and count II of the counterclaim. Defendants Jayson Investments, Michigan Beach Cooperative Partners Limited

Partnership, Jay Canel, and Scott Canel filed a cross-motion for summary judgment on all city claims and on count II of MBLP's counterclaim, arguing that the city was not damaged by the presale misrepresentations. CMC filed a cross-motion for summary judgment on count III of the city's complaint. The trial court granted summary judgment for all defendants. The trial court found that "because the [c]ity loan is not in default and the [c]ity will be repaid in accordance with its terms, defendants are entitled to judgment as a matter of law." The court also granted MBLP relief on count II of its counterclaim, directing the city to make its last loan payment.

■■ We review summary judgment *de novo*. *Ocasek v. City of Chicago*, 275 Ill. App. 3d 628, 630, 656 N.E.2d 44 (1995). Summary judgment is proper when the pleadings, depositions, and affidavits, taken in the light most favorable to the nonmovant, present no genuine issue of material fact and show that the movant is entitled to judgment as a matter of law. *Golla v. General Motors Corp.*, 167 Ill. 2d 353, 358, 657 N.E.2d 894 (1995).

■■ We first address the city's argument that the circuit court erred by ordering the city to make the last disbursement of the loan to MBLP. The city argues that it should not be required to pay the loan because "it is black letter law that the misrepresentations *** vitiate any obligation that party has under the contract." See *Ainsworth Corp. v. Cenco, Inc.*, 107 Ill. App. 3d 435, 439, 437 N.E.2d 817 (1982) ("fraud in the inducement vitiates all contracts"). As with most legal generalizations, there are exceptions. We have one of them here.

■■ ■ The city had two legal remedies available when it became aware of defendants' misrepresentations: (1) rescind the contract and recover the consideration paid; or (2) affirm the contract and sue for damages. *DeSantis v. Brauvin Realty Partners, Inc.*, 248 Ill. App. 3d 930, 936, 618 N.E.2d 548 (1993), quoting *Beaton & Associates Ltd. v. Joslyn Manufacturing & Supply Co.*, 159 Ill. App. 3d 834, 844, 512 N.E.2d 1286 (1987). When the city learned of the misrepresentation, it did not rescind the contract, but sued for damages. But the city continued to disburse monies under the loan through July 1989 and awarded $300,000 of tax credits in an attempt to save the project. If a defrauded party does not "disaffirm or abandon the transaction with all reasonable diligence" and "conducts himself *** as though [the contract were] still subsisting and binding," he waives his right to rescind and must continue to perform his obligations under the contract. *Eisenberg v. Goldstein*, 29 Ill. 2d 617, 622, 195 N.E.2d 184 (1963). Having failed to promptly exercise the option to rescind the contract, the city remains obligated under it, though still free to sue for damages. The trial court did not err in ordering the city to pay the final loan disbursement.

The city next argues that the trial court erred in finding that the city was not damaged by a fraudulent inducement to make the loan. The city argues the following damages resulted from the fraudulent misrepresentations: (1) the "diversion of [the city's] scarce housing funds from cooperative housing to subsidize instead a low-income rental high-rise project"; (2) a loan with a lesser value than the loan, absent the fraud, would have had; (3) the $1,383,240 HUD sanction; and (4) the tax credits, which the city claims were issued in "mitigation" of the city's damages.

■ The elements of the tort of fraudulent misrepresentation are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in justifiable reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance. *Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 128 Ill. 2d 179, 193, 538 N.E.2d 530 (1989). The torts of negligent and fraudulent misrepresentation differ only in the mental state element: the defendant who makes a negligent misrepresentation need not know the statement was false. Rather, plaintiff must show that defendant owed a duty to plaintiff to communicate accurate information and that the defendant was negligent in ascertaining the truth of the statement. *Board of Education v. A, C, & S, Inc.*, 131 Ill. 2d 428, 452, 546 N.E.2d 580 (1989).

■ The trial court found that the city failed to establish the last element under either theory: damage resulting from the city's reliance on the statement. Damage is an essential element of fraud. See *Gerill*, 128 Ill. 2d at 193; *Shah v. Chicago Title & Trust Co.*, 119 Ill. App. 3d 658, 661, 457 N.E.2d 147 (1983). Absolute certainty about the amount of damage is not necessary to justify a recovery if damage is shown, but damages may not be predicated on "mere speculation, hypothesis, conjecture or whim." *In re Application of Busse*, 124 Ill. App. 3d 433, 438-39, 464 N.E.2d 651 (1984). The evidence must show a basis for computing damages with a "fair degree of probability." *Barnett v. Caldwell Furniture Co.*, 277 Ill. 286, 289, 115 N.E. 389 (1917). See also *Posner v. Davis*, 76 Ill. App. 3d 638, 645, 395 N.E.2d 133 (1979).

■ The city claims that it was damaged by losing an opportunity to convert low-income rental housing into cooperative housing. We agree that the city's goal of converting low-income rental housing into cooperative housing was frustrated by the misrepresentation. But the tort of common-law fraud primarily addresses the invasion of economic interests. *Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 761-62, 625 N.E.2d 990 (1994), citing D. Dobbs, Remedies § 9.1, at 591 (1973). " '[D]eceit belongs to that class of tort of which pecuniary loss

generally constitutes part of the cause of action.' " *Giammanco*, 253 Ill. App. 3d at 762, quoting 37 Am. Jur. 2d *Fraud & Deceit* § 282, at 378 (1968). We cannot conclude based on our examination of the case law that fraudulent interference with the city's policy and efforts to encourage cooperative housing, standing alone, is tangible enough evidence to establish a pecuniary loss.

The city cites *City of Chicago v. Roppolo*, 113 Ill. App. 3d 602, 614, 447 N.E.2d 870 (1983), for the proposition that "this court has recognized that the [c]ity is damaged when important municipal policies are frustrated by fraud." In *Roppolo*, the city and a class of its citizens sought damages and a constructive trust on property obtained through misrepresentation. We did not decide the issue of whether the city was entitled to damages, for lack of a sufficient record. Nor did we articulate a standard or under what circumstances damages for the frustration of municipal policies might be appropriate. We remanded the case to allow the circuit court to conduct a hearing on damages. See *Roppolo*, 113 Ill. App. 3d at 617. Whatever elements might make up a case for damages based on frustration of municipal policies through fraud, the party defrauded must establish a measure for those damages. *Roppolo* stands for the proposition that the frustration of municipal policies can be caused by fraud, but it does not stand for the proposition that a court can arbitrarily assign a dollar figure to the city's frustration.

The city argues here that it is entitled to a "benefit-of-the-bargain" measure of damages. Benefit-of-the-bargain damages are developed by "assessing the difference between the actual value of the property sold and the value the property would have had if the representations had been true." *Gerill Corp.*, 128 Ill. 2d at 196. "[T]o show injury, plaintiffs must allege facts which show the value of what they received was not equal to the value of what they were promised." *Giammanco*, 253 Ill. App. 3d at 759.

We note that the city made no argument for benefit-of-the-bargain damages in its complaint or in response to defendants' motion for summary judgment. Arguments raised for the first time on appeal are waived. *Softa Group, Inc. v. Scarsdale Development*, 260 Ill. App. 3d 450, 452, 632 N.E.2d 213 (1993).

Even if the issue were properly before us, the city has not shown a genuine issue of material fact that damage may have been sustained. We agree that the "benefit of the bargain" is a proper measure of damages. See *Gerill Corp.*, 128 Ill. 2d at 196. In an appropriate case, a plaintiff may recover the difference between the value of the note or security interest as represented, and the value of the note or security interest received. See *Sigman v. Stevens-Norton, Inc.*, 70 Wash. 2d

915, 919, 425 P.2d 891, 895-96 (1967) (measuring damages as the difference in the value of the note as represented and its true value); *Busse*, 124 Ill. App. 3d at 440 (measuring damages as the difference between the value of the security interest as represented and the value of the security interest received). But the city neither alleged in its complaint nor offered evidentiary materials at summary judgment that such damages were sustained.

The city argues that even though the loan is not yet in default, it has been injured by defendants' inability to pay and the increased risk to the city's investment. But we can only speculate about whether the loan will be repaid when it becomes due after 42 years, or whether the building's use as rental housing makes the investment "riskier." The city's claim that the loan will never be repaid, and that this possibility of nonpayment affects the value of the loan, is not supported by expert opinion or other evidence in the record. We can only conclude that the argument is based on "speculation, hypothesis, [and] conjecture." See *Posner*, 76 Ill. App. 3d at 645.

The city now claims that, if this case is remanded, experts will testify to the reduced value of the loan. But the city did not assert before the trial court that such evidence was available. While a plaintiff need not prove his case at summary judgment, he must come forward with enough evidence to create a genuine issue of material fact. *Holland v. Arthur Andersen & Co.*, 212 Ill. App. 3d 645, 651, 571 N.E.2d 777 (1991).

The city, relying on *Busse*, 124 Ill. App. 3d 433, 464 N.E.2d 651, next asserts that the "benefit-of-the-bargain" measure of damages entitles it to "damages *** equal [to] the amount of the loan." Even if this argument were properly developed before the trial court, we are not persuaded. In *Busse*, the defendants fraudulently replaced a note and trust deed that gave plaintiffs a senior security interest. The replacement was a note and trust deed that subordinated the plaintiffs' purchase-money security interest in the subject property. The issue was whether plaintiffs established the value of the senior security interest lost as a result of the misrepresentation. The court concluded that a recent sale price of the property was evidence of its value. *Busse*, 124 Ill. App. 3d at 440. The plaintiffs were entitled to the difference between the value of the security interest as represented, $225,000, and the value of the security interest received, which was nothing. The court then limited the recovery to the amount due under the note. *Busse* does not stand for the proposition that a plaintiff is always entitled to the full amount loaned on a fraudulently induced promissory note and mortgage. Unlike the plaintiffs in *Busse*, where there was evidence of a recent sales price, the city has offered no evi-

dence that the value of its mortgage or loan is less than it would have been if defendants' misrepresentations had been true.

■ The city also argues it is entitled to consequential damages. As a general rule, a plaintiff may recover damages for injuries proximately caused by defendant's representations. *Gold v. Dubish*, 193 Ill. App. 3d 339, 351, 549 N.E.2d 660 (1989). First, the city suggests that it is entitled to damages in the amount of the HUD sanction. The city argues that absent the misrepresentation, the city would not have made the loan, and, going a little farther down the road, money dispersed would then not have been misappropriated and HUD then would not have imposed sanctions. The proximate cause problem is evident.

The city is not entitled to all losses that would not have occurred "but for" the misrepresentation. See *Giammanco*, 253 Ill. App. 3d at 760. In an action for fraud, " 'damages *** must be a proximate, and not remote, consequence of the fraud.' " See *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 59, 643 N.E.2d 734 (1994), quoting *Brown v. Broadway Perryville Lumber Co.*, 156 Ill. App. 3d 16, 25, 508 N.E.2d 1170 (1987), and citing *Key v. Jewel Cos.*, 176 Ill. App. 3d 91, 530 N.E.2d 1061 (1988). While the city would not have been sanctioned if it had not entered the fraudulently induced transaction, "proximate causation limits recovery to 'those damages which might foreseeably be expected to follow from the character of the misrepresentation itself.' " *Martin*, 163 Ill. 2d at 61, quoting W. Prosser, Torts § 110, at 732 (4th ed. 1971). There was nothing in the original misrepresentation that would lead one to conclude that HUD funds would be misused and lead to a government sanction.

■ The city next argues that it is entitled to the $300,000 worth of tax credits the city issued to MBLP. We disagree. The tax credits had no independent value when issued to MBLP. The credits only became valuable as a benefit to investors after syndication. See *Michigan Beach I*, 242 Ill. App. 3d at 647. Fraud damages are measured by the plaintiff's loss, not the defendant's gain. *Shah*, 119 Ill. App. 3d at 662.

■ We finally address the city's argument that it is at least entitled to nominal damages. If a party proves all the elements of fraud or negligent misrepresentation, including the essential element of damage, nominal damages can be recovered. See *Giammanco*, 253 Ill. App. 3d at 758. Here the city has not established the essential element of damage and is not entitled to nominal damages. See *Purcell & Wardrope Chartered v. Hertz Corp.*, 175 Ill. App. 3d 1069, 1084, 530 N.E.2d 994 (1988). Even if we concede the point, the city has waived this argument. The city did not argue that it was entitled to nominal damages before the trial court or seek nominal damages in its complaint. See *Softa Group*, 260 Ill. App. 3d at 452.

■ We finally address the city's argument that the trial court erred in granting summary judgment to defendants for all defendants named in count III of the city's third amended complaint. Defendants do not respond to this argument on appeal.

Count III alleges that defendants CMC and the Cooperative, as agent of MBLP and Jayson, breached contractual duties to ensure that city loan proceeds were spent only on eligible rehabilitation expenses. The trial court denied the city's motion for summary judgment, finding that several disputes of material fact remained, including "the [contractual] duties of CMC and the city ***, the performance of their respective obligations, and the city's having incurred any resulting damages." The trial court then, without explanation, granted summary judgment to all defendants named in count III.

Although the trial court did not give a reason for granting summary judgment on count III, we may affirm summary judgment based on any grounds supported by the record. *Pepper Construction Co. v. Transcontinental Insurance Co.*, 285 Ill. App. 3d 573, 577, 673 N.E.2d 1128 (1996).

The city, CMC, and the Cooperative entered into an "agreement pursuant to 24 C.F.R. §§ 221.540(e) and 207.19(c)(7)." The agreement provided that rehabilitation funds "must be used solely for eligible costs associated with the rehabilitation project." The agreement also said "CMC will have the sole authority to resolve any significant disputes arising out of the inspection process and out of the disbursement of Rental Rehabilitation Grant Program monies of the City loan." CMC also "retain[ed] the right to approve construction advances after giving full consideration to any reported noncompliance by the City of Chicago." In its summary judgment motion, the city argued that these provisions "remove control of the disbursement of [rental rehabilitation funds] from the city and rest control in [CMC], who certified eligible costs."

These provisions indicate that CMC has the power to decide whether disbursement is proper only if a "dispute arise[s]" or in response to "reported noncompliance." The city's complaint does not allege that CMC was faced with a dispute or report of noncompliance. The city cites no other contract language to show that CMC had an obligation to oversee compliance with HUD regulations. Summary judgment for CMC was proper.

The trial court also granted summary judgment for the Cooperative, Jayson, and MBLP on count III. The agreement required the Cooperative, an alleged agent of Jayson and MBLP, to spend city loan funds in compliance with HUD regulations. But the trial court made an oral finding that questions of fact remain regarding performance of

those obligations. We agree with that finding. We must reverse the trial court's grant of summary judgment for Jayson, MBLP, and the Cooperative on the city's count III, and remand for further proceedings.

Affirmed in part and reversed in part; cause remanded.

LEAVITT, P.J., and GORDON, J., concur.