THIRD DIVISION
DECEMBER 16, 2009

Nos. 1-08-0168 and 1-08-0281 (Consolidated)

| | |
|---|---|
| MICHAEL DLOOGATCH, DAVID BIRNBAUM, ) HERBERT LEDERER, and VICTOR R. FERNITZ,) on Behalf of Themselves and All Others Similarly ) Situated, ) ) Plaintiffs-Appellants, ) ) v. ) ) JOHN N. BRINCAT, JOHN N. BRINCAT, JR., ) JAMES A. DOYLE, WILLIAM C. CROFT, ) MERCURY FINANCE COMPANY, and KPMG ) PEAT MARWICK, L.L.P., ) ) Defendants-Appellees ) ) (Terra Foundation For The Arts, ) ) Intervening Class Member and ) Separate Appellant). ) | Appeal from the Circuit Court of Cook County. No. 97 CH 8790 Honorable Daniel A. Riley, Judge Presiding. |

JUSTICE COLEMAN delivered the opinion of the court:

Plaintiffs, a class of individual investors, appeal from an order of the circuit court of Cook County granting defendant KPMG's motion to dismiss pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)) for failing to state a claim upon which relief may be granted. This appeal was consolidated with the separately filed appeal by Terra Foundation for the Arts (Terra), a purported intervening class member. Plaintiffs claim that they retained their stock in Mercury Finance Company (Mercury) based on fraudulent financial reports

prepared by Mercury's auditor, KPMG, and suffered pecuniary damage as a result of the fraud. KPMG is the only remaining defendant. On appeal, plaintiffs argue that the trial court erred in dismissing their fourth amended complaint because they adequately plead reliance and damage to maintain their common law fraud claim; they are not required to plead the precise method to be used at trial to calculate damages; and the fourth amended complaint does pled a method of calculating damages. Terra joined in plaintiffs' arguments and wrote separately to further argue in support of an alternate measure of out-of-pocket damages articulated by plaintiffs. Defendant contends that plaintiffs' theories for calculating damages are invalid, reliance has not sufficiently been pled, and the complaint only asserts derivative claims.

The instant appeal presents a case of first impression in Illinois. Our courts have never considered whether the "holder" of securities may bring a common law fraud claim and what the pleading requirements are for such a claim, as well as which method of calculating damages is appropriate. For the reasons set forth below, we affirm the trial court's order dismissing the complaint.

PROCEDURAL BACKGROUND

Prior to February 23, 1994, the members of the class purchased publicly traded common stock in Mercury Finance Company. Mercury was a consumer finance company engaged in the business of purchasing individual installment sales finance contracts from automobile dealers, extending short-term installment loans to consumers, and selling credit insurance. Defendant KPMG is an accounting firm that Mercury hired to perform audits of Mercury's financial statements from 1993 to 1997. On January 29, 1997, Mercury publicly reported that the financial reports from 1993 to 1996 had been overstated due to accounting errors. That same day the New

York Stock Exchange suspended trading on Mercury stock. On January 28, 1997, the stock was trading at $14.875 per share. When trading of Mercury stock reopened on January 31, 1997, the price had dropped to $2.125 per share.

On July 16, 1996, plaintiffs filed a class action complaint against Mercury's chief executive officer and directors, Mercury, and KPMG alleging negligence, negligent misrepresentation, breach of fiduciary duty (except against KPMG), and common law fraud. The original complaint was dismissed and plaintiffs filed a first amended complaint alleging negligence, negligent misrepresentation, and common law fraud as well as a count against KPMG for aiding and abetting the perpetration of a fraud. William C. Croft, one of Mercury's outside directors, was dismissed. Mercury was also dismissed after filing for bankruptcy protection.

KPMG filed a motion to dismiss the first amended complaint. During argument on the motion, the trial court *sua sponte* raised the issue of federal preemption based upon the Securities Exchange Act of 1934. Although all the parties agreed that plaintiffs' claims were not preempted, the trial court dismissed on that basis.

Plaintiffs appealed the order dismissing the first amended complaint and this court reversed and remanded after concluding that the claim was not preempted by federal law. In *Dloogatch v. Brincat,* No. 1–98–3139 (1999) (unpublished order under Supreme Court Rule 23), this court explicitly stated that it expressed no opinion on whether any of plaintiffs' allegations were sufficient to withstand a motion to dismiss.

Following remand to the trial court, defendant filed another motion to dismiss, which was denied as to negligence, negligent misrepresentation and fraud, but was granted on the count KPMG for aiding and abetting a fraud.

On December 7, 1999, plaintiffs reached a settlement with Mercury's bankruptcy estate and the directors and officers. Plaintiffs filed a motion to certify the class. Judge McGann granted the motion and certified the class.[1] In the order certifying the class, Judge McGann stated that the court need not determine the appropriate measure of damages at that instant, but the "benefit of the bargain" was not the appropriate measure in this case.

KPMG filed a motion to dismiss plaintiffs' second amended complaint, which the trial court granted. The trial court directed plaintiffs to replead certain allegations to make it clear that they were only being pled to preserve the record. The trial court also instructed plaintiffs that Baughman needed to specify the value of his stock at the time the fraud began and the price at which he sold it. The trial court rejected the "benefit of the bargain" and the "yardstick" alternative as appropriate measures of damages. In its order dismissing the second amended complaint, the trial court stated generally that in "holder claims" plaintiffs could plead damage through "allegations that demonstrate out of pocket damages proximately caused by the fraudulent inducement to refrain from selling."

On September 20, 2005, plaintiffs filed the third amended complaint. Defendants filed a motion to dismiss, which the trial court denied in substantial part with directions to further comply with the previous order to "clean up" the complaint. In its order, the trial court noted that plaintiffs complied with the court's previous directions regarding pleading damage by alleging two methods of measuring "out-of-pocket" damages. The trial court also ruled that "benefit of the bargain" was an inappropriate measure of damages based on the Illinois Supreme Court's then-recent decision in

---

[1] David Baughman replaced Michael Dloogatch as class representative after the trial court granted KPMG's motion for summary judgment and dismissed Dloogatch.

*Price v. Philip Morris, Inc.,* 219 Ill. 2d 182 (2005). The trial court further directed the parties to brief the issue of whether *Merrill Lynch, Pierce, Fenner & Smith v. Dabit*, 547 U.S. 71, 164 L. Ed. 2d 179, 126 S. Ct. 1503 (2006), preempted plaintiffs' claim based on the Securities Litigation Uniform Standards Act (SLUSA) (15 U.S.C. §78bb (2000)).

Plaintiffs filed their fourth amended complaint on February 27, 2007. Defendants filed a motion to dismiss the complaint. In the motion, defendants acknowledged that plaintiffs had complied with the trial court's instructions for amending the complaint, but argued that substantively the complaint was the same and still did not state a cause of action. KPMG further argued that plaintiffs' claims were preempted by SLUSA.

On December 19, 2007, the trial court granted KPMG's motion to dismiss. The trial court rejected the argument that SLUSA preempted plaintiffs' claims because plaintiffs had filed the cause of action prior to the enactment of SLUSA and, therefore, it did not apply. The trial court found that although plaintiffs had complied with previous pleading instructions, under no circumstances could plaintiffs adequately plead "any damage that was proximately caused by KPMG's misrepresentations." Plaintiffs' current appeal is from this order dismissing their fourth amended complaint.

DISCUSSION

As a preliminary note, plaintiffs' proposed cause of action, the "holder claim," would be preempted by the SLUSA, which prohibits class action lawsuits under state law that allege fraudulent misrepresentations or omissions in connection with the purchase or sale of a security, and which the United States Supreme Court held in *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 89, 164 L. Ed. 2d 179, 194, 126 S. Ct. 1503, 1515 (2006), applies equally to

"holder claims." Not only was the present case filed prior to the enactment of SLUSA, it is unclear from the record whether the purported class has 50 or more members. Thus, had the present cause of action accrued after the enactment of SLUSA and the class had more than 50 members, it would be preempted.

Pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2006)), a motion to dismiss challenges the legal sufficiency of the complaint. On review, the question is "whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief can be granted." *Vitro v. Mihelcic,* 209 Ill. 2d 76, 81 (2004). All facts apparent from the face of the pleadings, including any exhibits attached thereto, must be considered. *Beahringer v. Page*, 204 Ill. 2d 363, 365 (2003). A cause of action should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall v. Burger King Corp.,* 222 Ill. 2d 422, 429 (2006). The standard of review is *de novo*. *Vitro*, 209 Ill. 2d at 81.

The elements of a cause of action for fraudulent misrepresentation (sometimes called "fraud" or "deceit") are: "(1) [a] false statement of material fact (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from that reliance." *Soules v. General Motors Corp.,* 79 Ill. 2d 282, 286 (1980).

Here, the parties dispute the sufficiency of the pleadings only as to the elements of "reliance" and "damage." No court in Illinois has, as of yet, decided whether holders of securities even have a cognizable claim based on common law fraud.[2] Thus, Illinois courts have not

---

[2]In *Cashman v. Coopers & Lybrand,* 251 Ill. App. 3d 730 (1993), this court addressed

determined the pleading requirements to state such a claim. However, our supreme court has held that common law fraud demands a "higher standard" when it comes to pleading. *Board of Education v. A, C & S, Inc.,* 131 Ill. 2d 428, 457 (1989). " 'The facts which constitute an alleged fraud must be pleaded with specificity and particularity, including "what misrepresentations were made, when they were made, who made the representations and to whom they were made." [Citation.]' " *Prime Leasing, Inc. v. Kendig*, 332 Ill. App. 3d 300, 309 (2002). Failure to prove justifiable reliance is fatal to claims of fraudulent misrepresentation. *Schrager v. North Community Bank,* 328 Ill. App. 3d 696, 709 (2002).

The United States Supreme Court has considered whether a private cause of action exists for stockholders alleging violation of Securities Exchange Commission Rule 10b-5 (17 C.F.R. § 240.10b-5 (1973)) where they have neither purchased nor sold any of the shares. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 44 L. Ed. 2d 539, 95 S. Ct. 1917 (1975). The court refused to recognize such a claim. Although *Blue Chip Stamps* concerns the viability of a "holder claim" for violation of federal law and not for common law fraud on a state claim, the United States Supreme Court's reasoning for prohibiting such a cause of action is relevant to the present discussion. In *Blue Chip Stamps,* the court explained:

---

whether a group of shareholders had standing to sue in a private cause of action a corporation's outside accountant for breach of contract and breach of fiduciary duty where the corporation's stock lost all its value as a result of accounting errors. *Cashman*, 251 Ill. App. 3d at 732-33. This court found that the shareholders did not have standing to sue the accountant because they alleged an injury to the corporation that affected them only indirectly. *Cashman,* 251 Ill. App. 3d at 736.

"The manner in which the defendant's violation caused the plaintiff to fail to act could be as a result of the reading of a prospectus, as respondent claims here, but it could just as easily come as a result of a claimed reading of information contained in the financial pages of a local newspaper. Plaintiff's proof would not be that he purchased or sold stock, a fact which would be capable of documentary verification in most situations, but instead that he decided *not* to purchase or sell stock. Plaintiff's entire testimony could be dependent upon uncorroborated oral evidence of many of the crucial elements of his claim, and still be sufficient to go to the jury. The jury would not even have the benefit of weighing the plaintiff's version against the defendant's version, since the elements to which the plaintiff would testify would be in many cases totally unknown and unknowable to the defendant. The very real risk in permitting those in respondent's position to sue under Rule 10b-5 is that the door will be open to recovery of substantial damages on the part of one who offers only his own testimony to prove that he ever consulted a prospectus of the issuer, that he paid any attention to it, or that the representations contained in it damaged him." (Emphasis in original.) *Blue Chip Stamps,* 421 U.S. at 746, 44 L. Ed. 2d at 555, 95 S. Ct. at 1930.

The only case applying Illinois law in a "holder claim" did not decide whether such a claim was cognizable under Illinois law, but dismissed the complaint for failure to adequately plead a theory of damages or reliance. *Amzak Corp. v. Reliant Energy, Inc.,* No. 03–0877, slip op. at 19 n.3 (N.D. Ill. August 19, 2004). That case presented a similar factual situation to the present one. In *Amzak*, the plaintiffs alleged that the defendants had made false and misleading statements and that those statements artificially inflated Reliant Energy's stock price during the August 2, 1999, to May 10, 2002, time period inducing the plaintiffs to hold their stock rather than sell it. *Amzak Corp.*, slip op. at 6. The court in *Amzak* found the plaintiffs' allegations of reliance insufficiently particular because there was not, for example, "a particular allegation that an act of reliance (such as plaintiffs' declining to sell their shares via forward sale contracts) was influenced by any alleged misrepresentation." *Amzak Corp.*, slip op. at 18.

Plaintiffs do not cite any cases from any jurisdiction in which a court has both recognized a "holder claim" and upheld such a claim as viable past the pleading stage. In one of the few cases recognizing "holder claims," *Small v. Fritz Companies, Inc.*, the sole issue before the California Supreme Court was whether California should recognize a cause of action by persons wrongfully induced to hold stock instead of selling it. *Small v. Fritz Cos.*, 30 Cal. 4th 167, 171, 65 P.3d 1255, 1256, 132 Cal. Rptr. 2d 490, 492 (2003). The court concluded that California law should allow a holder's action for fraud or negligent misrepresentation. In *Small*, the court reasoned that California has long acknowledged that if the effect of misrepresentation is to induce forbearance-- to induce persons not to take action--and those persons are damaged as a result, they have a cause of action for fraud or negligent misrepresentation. However, that court limited the cause of action to stockholders who can make a *bona fide* showing of actual reliance upon the misrepresentations,

and remanded with leave to amend the complaint because the plaintiff failed to plead reliance with sufficient specificity to show that he can meet that requirement. *Small*, 30 Cal. 4th at 171, 65 P.3d at 1257, 132 Cal. Rptr. 2d at 492. The court went on to state that: "In a holder's action a plaintiff must allege specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place." *Small*, 30 Cal. 4th at 184, 65 P.3d at 1265, 132 Cal. Rptr. 2d at 503.

Plaintiffs argue that they adequately pled reliance because they pled that they relied on the statements by KPMG. In support of their argument they rely on *Schrager v. North Community Bank*, 328 Ill. App. 3d 696 (2002); however, in that case, the issue was whether the plaintiff's reliance was justifiable, not whether the plaintiff had sufficiently pled reliance. Thus, beyond the general statement of the elements of fraudulent misrepresentation, *Schrager* is of limited instructive value.

Here, plaintiffs' fourth amended complaint alleges, in pertinent part, that "[a]s a result of these misrepresentations, plaintiffs and the Class held their Mercury common stock believing Mercury to be in sound financial condition, only to experience dramatic and substantial losses when the truth about Mercury's poor financial condition was disclosed on January 29, 1997." Throughout the complaint, plaintiffs make similar statements to the effect of "plaintiffs relied on KPMG's audit opinion letters."

As in *Amzak* and *Small*, we find that plaintiffs have not pled reliance with sufficient specificity and particularity to withstand the motion to dismiss, whether or not this court decides to recognize "holder claims." The allegation that plaintiffs "relied" without more is simply a

conclusory statement that gives no insight into facts that plaintiffs would ever be able to prove supporting that claim. See *Anderson v. Vanden Dorpel,* 172 Ill. 2d 399, 408 (1996) (in opposing a motion to dismiss under section 2-615, a plaintiff cannot rely on mere conclusions of law or fact unsupported by specific factual allegations). As the California Supreme Court put it in *Small,* "[t]he plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually relied on the misrepresentations." *Small,* 30 Cal. 4th at 184, 65 P.3d at 265, 132 Cal. Rptr. 2d at 503. Therefore, we conclude that plaintiffs have failed to allege sufficient facts to state a cause of action, and such factual deficiencies may not be cured by liberal construction. See *Knox College v. Celotex Corp.,* 88 Ill. 2d 407, 427 (1981).

Plaintiffs have also failed to adequately allege the element of damage. With regard to damage, plaintiffs contend that they were only required to plead "damage," that is, that they allege facts to show that they suffered a loss as a result of KPMG's misrepresentations. Plaintiffs argue that they were not required to plead a legal theory for measuring damages, and even if they were required to do so, they did plead a method of calculating damages. The trial court disagreed and dismissed plaintiffs' complaint because it did not adequately allege facts to show they suffered a loss as a result of KPMG's misrepresentations.

The fourth amended complaint sets forth four methods of calculating damages. First, the "benefit of the bargain" measure, which entails placing plaintiffs in the same financial condition they would have been in if the misrepresentations had in fact been true. Thus, in the present case this method would measure the value of the stock prior to disclosure ($14.875 per share on January 28, 1997) minus the value of the stock after the disclosure ($2.125 per share on

January 31, 1997). Plaintiffs also allege three alternative "out-of-pocket" methods for measuring damages. The tax-basis measure involves determining the initial acquisition price and subtracting the value after the truth was disclosed (*i.e.*, calculating: acquisition price - value after disclosure + proceeds from the sale of the stock). The first "pecuniary loss" measure equals "the difference between the value of what he has received in the transaction and its purchase price or other value given to it." The second "pecuniary loss" value "should be measured either as the value of Mercury stock on the day that each received, read and relied upon the first fraudulent document (per Exhibit A the closing price on February 22, 1994, was $16 per share) or the value of the stock the day prior to the truth being disclosed (the last day of reliance) (per Exhibit A the closing price on January 28, 1997 was $14.875 per share) minus the value plaintiffs and the Class ultimately received subsequent to disclosure of the truth."[3]

Generally, a plaintiff is not required to plead a legal theory for calculating damages in the complaint; plaintiffs must allege "damage," *i.e.,* a loss, hurt or harm which results from the injury. See *Giammanco v. Giammanco,* 253 Ill. App. 3d 750, 758 (1993). In the present case, it is necessary to show some method of calculating damage in order for plaintiffs to sufficiently allege a loss since securities fluctuate in value and plaintiffs neither purchased nor sold the stock during the alleged fraud. To find otherwise, would permit plaintiffs to plead damage in the same conclusory fashion that they pled reliance, (*i.e.,* we suffered a loss). As this court has stated in prior opinions: "Damage is an essential element of fraud. [Citation.] Absolute certainty about the

---

[3]Separate appellant and intervening class member Terra Foundation for the Arts wrote separately in support of the alternative measure of "out-of-pocket" damages (*i.e.,* the difference between the price of the shares the day before the fraud began, $16 per share, and the price of the shares after the fraud was revealed, $2 a share).

amount of damage is not necessary to justify a recovery *if damage is shown*, but damages may not be predicated on 'mere speculation, hypothesis, conjecture or whim.' " (Emphasis added.) *City of Chicago v. Michigan Beach Housing Cooperative,* 297 Ill. App. 3d 317, 323 (1998), quoting *In re Application of Busse,* 124 Ill. App. 3d 433, 438-39 (1984). Moreover, the evidence must show a basis for computing damages with a "fair degree of probability." *Michigan Beach Housing Cooperative,* 297 Ill. App. 3d at 323.

Beyond the issue of whether plaintiffs' were required to plead a measure of damage, the methods of calculating damages that they have pleaded, illustrate that plaintiffs' loss derives not from the fraud *per se,* but from the *disclosure* of the misrepresentations and the subsequent correction in the market price of the stock. As a publicly traded company, Mercury was required to disclose the misstatements in its financial reports when they were discovered. See 17 C.F.R. §249.308 (2008). Although unfortunate for the holders of Mercury stock, the market provides no guarantee of profit even where a company is financially sound. Plaintiffs' real complaint is the diminution in value of their shares of stock.

In *Crocker v. FDIC*, 826 F.2d 347 (5th Cir. 1987), the Fifth Circuit Court of Appeals held that the holder plaintiffs had not suffered cognizable damage from holding stock during the period of alleged fraud, only to see the value of their shares decline after the fraud was revealed. That court concluded that, without the fraud, the plaintiffs "could never have realized the artificially high profit that they claim to have unjustly lost" and the plaintiffs were not entitled to the fraud-inflated value. *Crocker*, 826 F.2d at 352.

Similarly, in *Chanoff v. United States Surgical Corp.,* 857 F. Supp. 1011, 1018 (D. Conn. 1994), the plaintiff shareholders alleged that they refrained from selling the stock because the

defendant corporation's fraudulent failure to disclose certain information inflated the value of the stock. That court found that all of the plaintiff's claims for damages based on the plaintiff's failure to sell or hedge their stock failed because they were "too speculative to be actionable." *Chanoff*, 857 F. Supp. at 1018. There, as here, the defendants argue "that the plaintiffs have not alleged [a] cognizable loss because plaintiffs cannot claim the right to profit from what they allege was an unlawfully inflated stock value. In rebuttal, the plaintiffs argue that had the disclosures been timely made, in the early stages *** the market would not have responded [so] drastically as it did when the disclosures were made in 1993, thereby characterizing their loss as the difference in the impact of the disclosures on the market, not lost profits." *Chanoff*, 857 F. Supp. at 1018. That court stated that "this argument is merely a creative costume for the lost profits claim, which courts have clearly rejected." *Chanoff*, 857 F. Supp. at 1018.

Several cases from federal courts around the country have dismissed "holder claims" for a lack of damage since the losses derived from the revelation of the truth rather than the fraud itself. See, *e.g.*, *In re Enron Corp. Securities, Derivative & "ERISA" Litigation,* 490 F. Supp. 2d 784, 818 n.43 (S.D. Tex. 2007) (holding that Texas statutes expressly prohibited holder claims); *Arnlund v. Deloitte & Touche LLP,* 199 F. Supp. 2d 461, 487 (E.D. Va. 2002) (concluding that the claims of the retaining shareholders fail to adequately plead causation between the misrepresentation and the harm since the loss resulted from disclosure and not from fraud); *Arent v. Distribution Sciences, Inc.,* 975 F.2d 1370 (8th Cir. 1992) (holding that the plaintiff's claim failed because any loss was not caused by the failure to disclose or because they were unable to realize the true value of the stock, but because the true value of the stock was zero).

The court in *Amzak,* the Northern District of Illinois case discussed above, also found the plaintiffs' allegations of damage insufficient to state a claim for fraud. The plaintiffs in *Amzak* claimed damages because, on May 10 and 13, 2002, in the wake of curative statements disclosing the round trip trades, Reliant Energy's stock fell from $24.60 on May 9, 2002, to $15.87 on May 14, 2002. The plaintiffs alleged that they would have sold the stock, but did not do so because of the alleged misrepresentations. The plaintiffs claimed damages in two ways: (1) they refrained from selling the shares due to the inflated stock price from the misrepresentation; and (2) they had to make payments to their lenders to prevent them from selling the stock. The *Amzak* court found both theories flawed because the first theory "essentially complains that they did not sell the stock while its price was artificially (and allegedly fraudulently) inflated," and the second theory, which alleged out-of-pocket losses based on the price difference between the time of the "margin default buy-back" and the later sales after the fraud related collapse, would be nothing but a windfall to the plaintiffs.

The methods of calculating damages presented in the instant case likewise present potential for windfall to plaintiffs profiting from fraud-inflated stock prices. Despite members of our supreme court, in a plurality opinion in *Price v. Philip Morris, Inc.,* 219 Ill. 2d 182 (2005), indicating that "benefit-of-the-bargain" is the appropriate measure of damages in a fraud case, the present instance is not appropriate for that measure of damages because it would permit plaintiffs, who paid fair market value for their stock, to benefit from the fraud. Unlike the situation where a party has been induced to purchase something for an inflated price based on fraudulent statements, here plaintiffs paid fair market value and, thus, are not complaining that they overpaid for the stock, but instead that they suffered a loss when the market price of the stock fell after disclosure

of the fraud. Thus, if the "benefit of the bargain" method is used to calculate damages, it would allow plaintiffs to benefit from the fraudulently inflated price of the stock when they neither purchased nor sold the stock at that price.

Plaintiffs' measures for "out-of-pocket" losses are equally unavailing. Plaintiffs' first alternative bases its measure on plaintiffs' acquisition price, yet it is undisputed that plaintiffs paid fair market value for the shares when they were acquired; thus, that price has no causal relationship to the alleged misrepresentation. Plaintiffs' second alternative also uses purchase price to claim damage as the difference between the value received in the transaction and the purchase price; however, as with the first alternative, such a measure would have no causal relationship to the alleged misstatements. Plaintiffs' final proposed measure of damages, the value of the stock prior to disclosure of the fraud minus the value after disclosure, would give plaintiffs a windfall and allow them to profit from the fraud because, as observed by the Fifth Circuit in *Crocker*, plaintiffs could not have sold their stock at the artificially high price absent the fraud. Therefore, we find that plaintiffs have failed to adequately plead that they suffered a compensable loss as a result of the alleged fraud and not from its disclosure.

Based on the foregoing analysis, we conclude that plaintiffs have failed to adequately plead both reliance and damage and therefore fail to state a cause of action upon which relief may be granted. Accordingly, we affirm the trial court's order dismissing the complaint with prejudice.

Affirmed.

STEELE, J., concurs.

MURPHY, P.J., concurs in part and dissents in part.

PRESIDING JUSTICE MURPHY, concurring in part and dissenting in part:

I write separately because I would hold that a "holder" cause of action exists in Illinois. Section 525 of the Restatement (Second) of Torts provides, "One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act *or to refrain from action in reliance* upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation." (Emphasis added.) Restatement (Second) of Torts §525, at 55 (1977). See also Restatement (Second) of Torts §531, at 66 (1977) ("One who makes a fraudulent misrepresentation is subject to liability to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation, for pecuniary loss suffered by them through their justifiable reliance in the type of transaction in which he intends or has reason to expect their conduct to be influenced"); 37 Am. Jur. 2d *Fraud & Deceit* §243 (1969) ("A person is entitled to damages resulting from inaction when an untrue statement is made with the intent to induce that person to refrain from acting, so long as it can be demonstrated that the false statement produce the inaction").

Illinois cases have also found claims of fraud based on a scheme designed to cause a person to refrain from acting. In *Schnidt v. Henehan*, 140 Ill. App. 3d 798 (1986), the plaintiffs alleged that the defendant, their attorney, falsely told them that he had arranged for necessary mortgage financing, that they relied on his statement and did not attempt to arrange financing on their own, and that the defendant told them they should not seek financing on their own or they would "screw up" the deal. The court concluded that the plaintiffs stated a cause of action for fraud, as his statement was made for the purpose of inducing the plaintiffs to "refrain from acting."

*Schnidt*, 140 Ill. App. 3d at 804. See also *Chatham Surgicore, Ltd. v. Health Care Service Corp.*, 356 Ill. App. 3d 795, 804 (2005); *Wright v. Chicago Title Insurance Co.*, 196 Ill. App. 3d 920, 926 (1990).

The principle that inducing another to refrain from action is sufficient to state a cause of action for fraud should apply equally to cases where a plaintiff is induced to refrain from selling stock. In *Small*, the California Supreme Court applied the long-recognized "principle that induced forbearance can be the basis for tort liability" to misrepresentations involving corporate stock. *Small*, 30 Cal. 4th at 174, 65 P.3d at 1259, 132 Cal. Rptr. 2d at 495. See also *Rogers v. Cisco Systems, Inc.*, 268 F. Supp. 2d 1305, 1313-14 (N.D. Fla. 2003); *Gutman v. Howard Savings Bank*, 748 F. Supp. 254, 266-67 (D.N.J. 1990). "Lies [that] deceive and injure do not become innocent merely because the deceived continue to do something rather than begin to do something else. Inducement is the substance of reliance; the form of reliance--action or inaction--is not critical to the actionability of fraud." *Gutman*, 748 F. Supp. at 264.

Plaintiffs must, of course, properly plead reliance, and I agree with the majority that plaintiffs failed to do so. As *Small* reasoned:

> "In a holder's action a plaintiff must allege specific reliance on the defendants' representations: for example, that if the plaintiff had read a truthful account of the corporation's financial status the plaintiff would have sold the stock, how many shares the plaintiff would have sold, and when the sale would have taken place. The plaintiff must allege actions, as distinguished from unspoken and unrecorded thoughts and decisions, that would indicate that the plaintiff actually

relied on the misrepresentations." *Small*, 30 Cal. 4th at 184, 65 P.3d

at 1265, 132 Cal. Rptr. 2d at 503.

The requirement in a holder action that a plaintiff allege "actions, as distinguished from unspoken

and unrecorded thoughts and decisions" (*Small*, 30 Cal. 4th at 184, 65 P.3d at 1265, 132 Cal. Rptr.

2d at 503), allows the court to separate "plaintiffs who actually and justifiably relied upon the

misrepresentations from the general investing public, who, though they did not so rely, suffered

the loss due to the decline in share value." *Rogers*, 268 F. Supp. 2d at 1314 n.18.

However, I disagree with the majority that plaintiffs have failed to adequately plead the

element of damage. Plaintiffs alleged that they retained their stocks based on defendant's

misrepresentations and suffered a loss when the true state of affairs was revealed and the stock

price crashed. Plaintiffs have alleged a " 'loss, hurt, or harm [that] results from the injury.' "

*Giammanco v. Giammanco*, 253 Ill. App. 3d 750, 758 (1993), quoting Ballatine's Law Dictionary

303 (3d ed. 1969).

As for the alleged intractability of calculating damages, the benefit-of-the-bargain and out-

of-pocket measures of damages are not "in all cases a perfect litmus test for the existence of

compensable damage." *Giammanco*, 253 Ill. App. 3d at 763. Plaintiffs should be allowed to put

several methods before the trier of fact or present expert testimony.

"[O]nce a plaintiff holder can show that a portion of the loss

is attributable to fraud, difficulty in proving the amount of the

damages will not bar a cause of action. Proof will, of course, often

require expert evidence. *** Experts may disagree--they often do--

but that is no reason to reject a holder's cause of action." *Small*, 30

-19-

Cal. 4th at 191, 65 P.3d at 1270, 132 Cal. Rptr. 2d at 508 (Kennard,

J., concurring).

As the court noted in *Giammanco*, "Courts administering justice should not be outpaced by creative wrongdoers." *Giammanco*, 253 Ill. App. 3d at 763.

Finally, I would remand this case to the trial court to give plaintiffs another opportunity to plead reliance with sufficient particularity, as outlined by the majority.