2021 IL App (1st) 200527

FIFTH DIVISION
MARCH 31, 2021

No. 1-20-0527

CASTLERIGG MASTER INVESTMENTS, LTD., )
                               )
     Plaintiff-Appellant, )
                               )
v. )
                               )
ABBVIE, INC. and RICHARD GONZALEZ, )
                               )
     Defendants-Appellees. )

Appeal from the
Circuit Court of
Cook County.

No. 19 L 11309

Honorable
Margaret A. Brennan,
Judge Presiding.

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.
Justices Hoffman and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1     The plaintiff-appellant, Castlerigg Master Investments, Ltd. (Castlerigg), appeals from the circuit court of Cook County's dismissal of its complaint against the defendants-appellees, AbbVie, Inc. (AbbVie) and Richard Gonzalez, for failure to state a claim. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 2                          BACKGROUND

¶ 3     Castlerigg is an investment fund based in the British Virgin Islands with its principal place of business in New York, New York. AbbVie is a Delaware-incorporated pharmaceutical company with its principal place of business in North Chicago, Illinois. Mr. Gonzalez is AbbVie's chief executive officer (CEO) and chairman of the board.

¶ 4    On June 20, 2014, AbbVie announced that it had approached another pharmaceutical company, Shire PLC (Shire), with an acquisition proposal.[1] Shire is organized under the laws of the island of Jersey, a self-governing dependency of the United Kingdom, and headquartered in Ireland. AbbVie disclosed that as part of its acquisition proposal with Shire, AbbVie would reincorporate as a foreign company outside of the United States and create a tax inversion, which would significantly reduce the amount it paid in taxes in the United States.

¶ 5    On July 18, 2014, AbbVie and Shire announced they had reached agreed terms and signed a merger agreement. The merger agreement provided that AbbVie would merge with Shire, with AbbVie as the surviving entity reincorporating in Jersey. The merger agreement projected a new, lower tax rate for the newly merged entity as a consequence of reincorporation under the laws of Jersey.

¶ 6    That same day, Mr. Gonzalez held an investor conference call to discuss the merger agreement. During the conference call, investment analysts asked Mr. Gonzalez about the emerging political debate in the United States surrounding tax inversions and the risk of United States government action to eliminate or restrict tax inversion benefits. Mr. Gonzalez answered that AbbVie had "studied this transaction very, very carefully" and believed it was "highly executable." He stated that the tax inversion was an additional benefit but "not the primary rationale" for the merger agreement.

¶ 7    On September 22, 2014, while the merger agreement was pending, the United States Treasury Department announced new federal tax regulations that would limit certain benefits of tax inversions and diminish the ability of inverted companies to pay a lower tax rate to the United States (the treasury notice).

---

[1]Shire is not a party to this appeal.

¶ 8    On September 29, 2014, Mr. Gonzalez issued a letter to all Shire employees, which AbbVie publicized to investors and filed with the United States Securities and Exchange Commission (the Shire letter). The Shire letter stated that AbbVie was still moving forward with the merger agreement and that Mr. Gonzalez was "more energized than ever" and "confident" about it. AbbVie also published a letter to its own employees stating that it was aiming for a fourth-quarter close of the merger agreement (the AbbVie letter).

¶ 9    As of September 29, 2014, Castlerigg held 114,457 Shire American depository receipts (ADRs)[2], worth more than $29.8 million based on the closing price of $260.67 that day.[3] According to Castlerigg, the conference call, as well as the Shire and AbbVie letters, induced it to maintain its Shire ADRs based on the belief that the merger agreement would close later that year.

¶ 10    On October 14, 2014, AbbVie announced that it was reconsidering the merger agreement, due, in part, to the September 22, 2014, treasury notice. On October 15, 2014, AbbVie confirmed that it was terminating the merger agreement. AbbVie's announcement stated:

> "Although the strategic rationale of combining our two companies remains strong, the agreed upon valuation is no longer supported as a result of the changes to the tax rules and we did not believe it was in the best interests of our stockholders to proceed."

Following AbbVie's announcement that it was not moving forward with the merger agreement, Shire's ADRs fell 30% in value in one day.

¶ 11    On October 11, 2019, Castlerigg filed a complaint against AbbVie and Mr. Gonzalez in

---

[2]ADRs are negotiable certificates representing ownership in publicly traded foreign corporations. *Cohan v. Citicorp*, 266 Ill. App. 3d 626, 627 (1993).

[3]The parties do not indicate when Castlerigg acquired its Shire ADRs; nor is that information apparent in the record on appeal.

the circuit court of Cook County. The complaint alleged that, as a merger arbitrage investor, Castlerigg buys and holds stocks based on the probability of an acquisition closing, which requires "careful monitoring" and evaluation to determine if a proposed acquisition will close. Regarding the merger agreement at issue in this case, Castlerigg's complaint alleged that AbbVie's and Mr. Gonzalez's "assurances on September 29, 2014 induced [Castlerigg] to maintain its judgment that the [merger agreement] would close and hold Shire ADRs worth approximately $30 million." Castlerigg alleged that AbbVie made fraudulent misrepresentations in the Shire and AbbVie letters regarding the status of the merger agreement. Specifically, the complaint stated:

> "As the CEO, Board Chairman and leader of AbbVie's effort to acquire Shire, [Mr.] Gonzalez had special knowledge of the probability that the merger would not close in light of the September 22, 2014 tax regulation changes. AbbVie abandoned the Shire transaction just two weeks after [Mr.] Gonzalez's statements. On information and belief, [Mr.] Gonzalez's statements lacked factual basis, and [Mr.] Gonzalez knew facts about AbbVie's internal reaction to the tax regulation changes that were incompatible with his statements. On information and belief, [Mr.] Gonzalez and AbbVie made the statements with reckless disregard for their truth or falsity, knowing that Shire investors such as [Castlerigg], having no reason to believe [AbbVie's and Mr. Gonzalez's] statements were untrue or misleading, scrutinized and relied on their statements."

¶ 12    Castlerigg's complaint further alleged that "it would neither have continued to hold its positions in Shire, nor would [it] have maintained its judgment the transaction would close, if [Castlerigg] knew that AbbVie was then evaluating whether to abandon the Shire acquisition as a result of the recently announced restrictions on tax inversions." Castlerigg's complaint concluded

by stating that because it held onto its Shire ADRs based on AbbVie's and Mr. Gonzalez's misrepresentations, it was injured when the value of Shire ADRs dropped by 30% following AbbVie's announcement that it was terminating the merger agreement. The complaint sought compensatory damages, punitive damages, and interest all "in an amount to be determined at trial."

¶ 13    AbbVie and Mr. Gonzalez filed a combined motion to dismiss Castlerigg's complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILC 5/2-619.1) (West 2018)). The motion to dismiss argued that the trial court should dismiss Castlerigg's complaint pursuant to section 2-615 of the Code (*id.* § 2-615) because the complaint did not adequately plead a fraud claim, and because the complaint was time barred by the statute of limitations, pursuant to section 2-619 of the Code (*id.* § 2-619). AbbVie and Mr. Gonzalez argued that Castlerigg had failed to plead a fraud claim because Illinois does not recognize "holder claims,"[4] such as that alleged in Castlerigg's complaint. They argued that the Illinois Securities Law of 1953 (Securities Law) (815 ILCS 5/1 *et seq.* (West 2018)) protects investors from fraud regarding the *sale or purchase* of securities, but not regarding the *holding* of securities. Citing *Dloogatch v. Brincat*, 396 Ill. App. 3d 842, 847 (2009), AbbVie and Mr. Gonzalez stated in their motion: "Castlerigg pursues its holder claims under a common law cause of action for fraud. But this attempt to end-run the Securities Law fails because Illinois courts have never recognized Castlerigg's purported claim." AbbVie and Mr. Gonzalez asked the trial court to dismiss Castlerigg's complaint for failure to state a claim.

¶ 14    Following a hearing on AbbVie and Mr. Gonzalez's motion to dismiss, the trial court stated:

---

[4]A "holder claim" occurs when the plaintiff is the holder of certain corporate securities, the value of which the corporation fraudulently inflates; when the fraud is discovered, the price of the stock drops precipitously, causing injury to the stockholder. See *Small v. Fritz Cos.*, 65 P.3d 1255, 1256-57 (Cal. 2003).

"Okay. I believe *Dlooglatch* does control here and for those reasons I think what you have pled is a holder claim, and the case is dismissed.

But in an effort to make sure that there's no ambiguity or if this is reviewed at some point in time by a higher court, I also note that there's no way you can take this outside of kind of the Securities Law as much as you're trying to do so and the three[-]year Statute of Limitations would also control.

So for both reasons, although I find that no cause of action for a holder claim can be pled in Illinois, I think *Dlooglatch* is very clear on that, so it is dismissed. But were that should be look[ed] at that this is just common[-]law fraud, I think the securities element of this is such that the three[-]year Statute of Limitations would control and the case is dismissed."

¶ 15    The trial court therefore dismissed Castlerigg's complaint with prejudice. This appeal followed.

¶ 16                                      ANALYSIS

¶ 17    We note that we have jurisdiction to consider this matter, as Castlerigg filed a timely notice of appeal. See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

¶ 18    Castlerigg presents the following issue: whether the trial court erred in dismissing its complaint. Castlerigg argues the trial court erred in holding that Illinois does not recognize holder claims. Further, Castlerigg claims that it *did* adequately plead the elements of a common-law fraud claim. Castlerigg also argues that the trial court erred in dismissing its complaint on the alternative grounds of statute of limitations.

¶ 19    "A motion to dismiss brought pursuant to section 2-615 of the Code challenges the legal sufficiency of a complaint by alleging defects on its face." *Alpha School Bus Co. v. Wagner*, 391

Ill. App. 3d 722, 735 (2009). While a plaintiff is not required to prove his case at the pleading stage, he must allege sufficient facts to state all the elements that are necessary to sustain his cause of action. *Visvardis v. Ferleger, P.C.*, 375 Ill. App. 3d 719, 724 (2007). A trial court should dismiss a complaint under section 2-615 only if it is readily apparent from the pleadings that there is no possible set of facts that would entitle the plaintiff to the requested relief. *Quinn v. Board of Education of the City of Chicago*, 2018 IL App (1st) 170834, ¶ 57. "The question for the court is whether the allegations of the complaint, when construed in the light most favorable to the plaintiffs, are sufficient to establish the cause of action." *Id.* We review *de novo* the trial court's dismissal of a complaint pursuant to section 2-615. *Wagner*, 391 Ill. App. 3d at 735.

¶ 20    The elements of common-law fraud are (1) a false statement of material fact by the defendant, (2) who knew that the statement was false (3) and intended to induce the plaintiff to act in reliance upon the statement, (4) the plaintiff reasonably relied upon the truth of the statement, and (5) the plaintiff suffered damage as a result of action in reliance upon the statement. *Feis Equities, LLC v. Sompo International Holdings, Ltd.*, 2020 IL App (1st) 191072, ¶ 51. It is well established that fraud-based claims demand a higher standard when it comes to pleadings, as there must be specific allegations of facts to support the claim. *Merrilees v. Merrilees*, 2013 IL App (1st) 121897, ¶ 15.

¶ 21    Castlerigg argues that its complaint adequately pled a holder claim, which should be recognized in Illinois, as well as a common-law fraud claim. We are guided in our analysis by *Dloogatch*, 396 Ill. App. 3d 842, which has analogous facts. In *Dloogatch*, investors alleged that a finance company's auditor committed fraud by using fraudulent financial reports to induce them to retain stock. *Id.* at 843. This court affirmed the trial court's dismissal of the complaint for failure to state a claim, specifically for failing to adequately plead reliance and damages. *Id.* at 854. In so

ruling, we noted that Illinois has yet to recognize holder claims, stating: "No court in Illinois has, as of yet, decided whether holders of securities even have a cognizable claim based on common[-]law fraud." *Id.* at 847. Ultimately, we held that, "whether or not this court decides to recognize 'holder claims,' " the plaintiffs in *Dloogatch*, had failed to plead reliance without more than "simply a conclusory statement that gives no insight into facts that plaintiffs would ever be able to prove supporting that claim." *Id.* at 850. We further held that the plaintiffs in that case had failed to adequately plead damages, and in so ruling, we noted the speculation, windfalls, and general difficulties associated with calculating damages in holder claims. *Id.* at 850-53.

¶ 22    Likewise, in the instant case, Castlerigg's complaint demonstrates the problems with holder claims related to damages among other shortcomings and similarly fails to adequately plead a common-law fraud claim. The elements of common-law fraud in dispute here are reliance and damages. In order to adequately plead reliance, Castlerigg needed to detail its reliance upon the defendant's actions and words with "sufficient specificity and particularity." *Id.* at 850. However, Castlerigg merely alleged that AbbVie's and Mr. Gonzalez's misrepresentations about the treasury notice induced it to hold onto its Shire ADRs. Castlerigg did not provide any more detail, such as how many ADRs would have been sold and when the sale would have taken place. Without such basic facts, it is nearly impossible to prove reliance. See *id.* Indeed, this analysis demonstrates precisely why holder claims are problematic. See *Small v. Fritz Cos.*, 65 P.3d 1255, 1266 (Cal. 2003) ("Plaintiffs who cannot plead with sufficient specificity to show a *bona fide* claim of actual reliance do not stand out from the mass of stockholders who rely on the market."). We accordingly find that Castlerigg failed to adequately plead the element of reliance.

¶ 23    Further, Castlerigg failed to adequately allege the element of damages. While plaintiffs are generally not required to calculate damages, Castlerigg did not even provide a *method for*

*calculating the damages* it sought. In light of the nature of this claim, this is an important factor to consider. Castlerigg's complaint simply sought compensatory damages, punitive damages, and interest all "in an amount to be determined at trial." Yet, damages is an essential element of fraud. *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 323 (1998). Absolute certainty about the amount of damages is not necessary, but damages may not be predicated upon mere speculation, and the plaintiff must show a *basis* for computing damages with a fair degree of probability. *Id.* Thus, Castlerigg's blanket statement in saying it was damaged by AbbVie's and Mr. Gonzalez's misrepresentations and requesting that the trial court determine the amount of damages was insufficient to adequately meet the pleading requirement for the element of damages.

¶ 24 Notably, Castlerigg likely did not calculate its damages because of the speculative and troublesome nature of calculating damages for holder claims. Had AbbVie announced that it was reconsidering the merger agreement with Shire earlier, as Castlerigg avers it should have, Shire's ADRs would likely still have fallen in value immediately following the announcement. Whether they would have fallen the same 30% or a different amount is entirely speculative. It could be said that Castlerigg's loss resulted from the revelation of the truth rather than the alleged fraud. See *Dloogatch*, 396 Ill. App. 3d at 851-52 (plaintiffs' loss derives not from the fraud *per se* but from the disclosure of the misrepresentations and the subsequent correction in the market price of the stock). Further, it should also be noted that some methods for calculating damages in holder claims present the potential for a windfall to plaintiffs who profit from fraud-inflated stocks. *Id.* at 853. It is interesting to note that it is Shire's ADRs that Castlerigg was holding at the time of the alleged fraud. Unlike true holder cases, Shire is an unimplicated third party with regard to the alleged fraud, yet it is the value of *its* ADRs which is at the center of Castlerigg's alleged damages. This

underscores another difficulty in establishing the propriety of the initial valuation, which in turn would bear upon reliance and damages.

¶ 25    In sum, Castlerigg failed to adequately plead reliance and damages and therefore failed to plead a claim for fraud. Accordingly, we affirm the trial court's judgment dismissing Castlerigg's complaint on the basis that it failed to state a claim. Consequently, we need not address the trial court's alternative grounds for dismissing the complaint, *i.e.*, that the complaint is time-barred by the statute of limitations.

¶ 26                               CONCLUSION

¶ 27    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 28    Affirmed.

---

**No. 1-20-0527**

---

| | |
|---|---|
| **Cite as:** | *Castlerigg Master Investments, Ltd. v. Abbvie, Inc.*, 2021 IL App (1st) 200527 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-11309; the Hon. Margaret A. Brennan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Michael D. Smith, Law Office of Michael D. Smith, P.C., of Chicago, and David J. Goldsmith, of Labaton Sucharow LLP, of New York, New York, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Tarek Ismail, Alan Littmann, Andrew Rima, and Betsy Farrington, of Goldman Ismail Tomaselli Brennan & Baum LLP, and James F. Hurst, Andrew A. Kassof, Gabor Balassa, and Whitney L. Becker, of Kirkland & Ellis LLP, both of Chicago, for appellees. |

---