**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240494-U

Order filed August 28, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| JUAN JAIME, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | |
| | ) | |
| SHABBIR NOMANBHOY, Individually and as | ) | |
| Trustee of the NOMANBHOY 2007 | ) | |
| CHILDREN'S TRUST f/b/o INSIYAH | ) | |
| NOMANBHOY and f/b/o SARRAH | ) | |
| NOMANBHOY, | ) | |
| | ) | Appeal No. 3-24-0494 |
| Defendant-Counterplaintiff-Appellee, | ) | Circuit No. 15-CH-1741 |
| | ) | |
| v. | ) | |
| | ) | |
| JUAN JAIME, THREE BROTHERS | ) | |
| INVESTMENTS, LLC, LA HACIENDA DE | ) | |
| LAS AMERICAS, INC., and | ) | |
| SUPERMERCADO DE LA HACIENDA, INC., | ) | |
| | ) | |
| Counterdefendants | ) | Honorable |
| | ) | John C. Anderson, |
| (Juan Jaime, Counterdefendant-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice Brennan and Justice Holdridge concurred in the judgment.

_____

¶ 1      *Held*:  The award of late fees is modified. Reverse piercing of the corporate veil is not proper, such that waiver of damages as to the corporation in a separate matter does not preclude liability of the shareholder in this matter. Damages are modified to correct an overcharge based upon a miscalculation and the improper inclusion of an expense.

¶ 2      Plaintiff/counterdefendant, Juan Jaime, appeals the Will County circuit court order awarding damages to defendant/counterplaintiff, Shabbir Nomanbhoy, Individually and as Trustee of the Nomanbhoy 2007 Children's Trust (Nomanbhoy). He argues that the late fees constituted an unenforceable penalty, that he is not liable for any contractual damages for La Hacienda de las Americas, Inc. (La Hacienda) because Nomanbhoy waived the contractual damages when it settled a separate action with La Hacienda, and that various amounts awarded as damages were improper. We affirm as modified.

¶ 3                                    I. BACKGROUND

¶ 4      Jaime filed the instant lawsuit in 2015 and Nomanbhoy filed a counterclaim. The matter proceeded to trial and judgment was ultimately entered in favor of Nomanbhoy and against Jaime on Nomanbhoy's fraud claim in the amount of $917,017.54. The matter was appealed, and this court largely affirmed the circuit court's order, but vacated the damage award and remanded the matter for further proceedings. See *Jaime v. Nomanbhoy*, 2023 IL App (3d) 190185-U, ¶ 105. The background facts of the matter were set forth at length in that order and therefore are not set forth herein, except as necessary to resolve the issues presently before the court. See *id.* ¶¶ 4-55.

¶ 5      This matter arises out of the sale in May 2014 of a commercial property by Jaime to Nomanbhoy, and the leases and addendums thereto, entered into between Nomanbhoy and Jaime's corporations—La Hacienda and Supermercado de La Hacienda, Inc. (Supermercado)— for the rental of spaces in that commercial property. The leases prohibited the tenants from

assigning the leases or subletting the properties without the consent of Nomanbhoy. The evidence at trial showed that Jaime entered into various subleases with third parties (sublessors Ali Shalash, Jose Jasso, and Amber Duffy), without Nomanbhoy's knowledge or consent, for the spaces that La Hacienda and Supermercado had leased from Nomanbhoy. These subleases entered into by Jaime provided for rent in a substantially higher amount than La Hacienda and Supermercado were required to pay Nomanbhoy. The amounts La Hacienda and Supermercado were required to pay were substantially lower than fair market value.

¶ 6     The leases also contained a holdover provision, which provided that if the tenants retained possession of the property after the expiration of the lease term with the express or implied consent of Nomanbhoy, the tenants agreed to pay 1 ½ times the monthly rent. Both La Hacienda and Supermercado retained possession of the properties past the expiration of the leases. During the course of the litigation, on October 15, 2015, the court entered an order stating that "all leases for the subject property shall remain in effect" and that Jaime's "leases shall remain in effect at the rates stated therein." The order also stated that it was entered without prejudice to either party. Further, on December 17, 2015, the court entered an order providing that by agreement of the parties, no existing lease shall be altered or cancelled without good cause shown and with an order of the court or reasonable agreement of the parties.

¶ 7     Additionally, the leases provided for a late charge for late payments that was "equal to the greater of (i) five percent (5%) per month of such overdue amount, *** or (ii) Fifty Dollars ($50.00 per month)." At trial, based upon exhibit 110A, which was submitted by Nomanbhoy and admitted into evidence, La Hacienda and Supermercado each owed $1,800 for a total of $3,600 in late fees. These totals appear to be based upon a one-time charge of $50 for each month that the tenants were late in making a payment.

¶ 8        The parties entered into an addendum, addendum #1 to the leases. This addendum provided that La Hacienda and Supermercado, in consideration for the below fair market value rent amount, would: (1) maintain the landscaping; (2) take care of snow and ice removal; (3) maintain clean and neat parking lots and common areas; (4) pay common area utility bills; (5) maintain elevator and common area equipment; and (6) pay for all repairs under $1,000. The parties later entered into addendum #2. This addendum modified the additional rent provision of the lease. It provided that, "Tenant shall pay 28% of the total annual cost of insurance for the shopping plaza." It also provided that, "Tenant shall pay 28% of the current year property tax bill for the Shopping Plaza ***. Tax bill for current year 2014 will be estimated to be the same as the previous year's 2013 tax bill." The addendum stated that the tenant would pay 1/12 of the tax bills and insurance on the first of each month. Additionally, it provided that, "Tenant shall continue to maintain and pay for all items numbered 1 to 6 in Addendum#1." La Hacienda's addendum #2 also included a provision that it would pay 100% of the current year property tax bill for the parking lot. La Hacienda's addendum #2 stated that the amount of "additional rent is currently estimated at $1810/month." Supermercado's addendum #2 stated that the amount of "additional rent is currently estimated at $1600/month."

¶ 9        During trial, exhibit 110A was entered into evidence. It was prepared by Nomanbhoy. He testified that the document was an ongoing spreadsheet that he maintained for the rent, additional rent, and other amounts due. Nomanbhoy explained that he obtained the information to create the totals regarding what had been paid from his bank statements. Each month when he received the rents, he deposited them in the bank. The bank account statements were admitted into evidence. Exhibit 110A also included the amount of rent and additional rent owed. Nomanbhoy explained how he arrived at the numbers included in the spreadsheet. He explained the figures listed, for

4

example that the total yearly amount due is the sum of the additional rents, the full year base rents, the holdover rent and the late fees that may be charged according to the lease. This document showed the amounts owed and paid through June 2018. As for the late fees, this document indicated that La Hacienda and Supermercado were late every month since the lease expired due to holdover rent, which Nomanbhoy testified was in August 2015. Nomanbhoy testified as to how he calculated the total amount be believed was due and owing for the La Hacienda and Supermercado leases as shown in Exhibit 110A. He specifically noted a row indicating late fees for various payments that Jaime was late on. In regards to Supermercado, Nomanbhoy testified that he was seeking a total of $92,407.77 in contract damages. This amount included the late fees, which Exhibit 110A showed as nothing for 2014, $300 for 2015, $600 for 2016, $600 for 2017 and $300 through June of 2018. For La Hacienda, Nomanbhoy testified he was seeking a total of $57,021.42 in contract damages, which included late fees. The late fees were the same amounts as those listed for Supermercado. According to Exhibit 110A, the total amount of late fees that Nomanbhoy was seeking from Jaime for Supermercado and La Hacienda through June of 2018 was $3,600.

¶ 10        In closing arguments, Nomanbhoy sought a total of $164,429.20 for contract damages related to the leases for Supermercado and La Hacienda, which was comprised of unpaid rent (base rent, additional rent, and holdover rent), late fees, and $15,000 for a destroyed heating unit. Nomanbhoy also stated in closing argument that he recorded all payments received, all common expenses chargeable to the tenants, and all rent that is owed as base rent, additional rent, hold over rent, or late fees. In doing so he cited to Exhibit 110A and transcripts of his testimony regarding Exhibit 110A. He also sought $708,000 in damages for fraud, relating to the unauthorized subleases Jaime entered into with third parties.

5

¶ 11        The court entered judgment in favor of Nomanbhoy. It awarded him $917,017.54 in contract damages and $708,000 for fraud. Following a motion for reconsideration by Jaime, the court, on March 12, 2019, vacated the contract damages but awarded $917,017.54 to Nomanbhoy on the fraud claim. The court found that Supermercado and La Hacienda were not properly served, and thus the judgment against them was vacated. Additionally, the claims for monetary damages for breach of contract against Supermercado and La Hacienda were dismissed with prejudice. However, the court found Jaime liable for damages. At the time of the court's order on the motion for reconsideration, Nomanbhoy had a separate action against La Hacienda seeking possession of the property La Hacienda had leased from Nomanbhoy. This matter was settled by an agreed order on March 18, 2019, which gave possession to Nomanbhoy and through which Nomanbhoy waived "any claim for damages/rent/holdover rent pursuant to [La Hacienda's] agreement to vacate."

¶ 12        Jaime appealed the judgment against him. This court largely affirmed but vacated the damage award and remanded for further proceedings. See *Jaime v. Nomanbhoy*, 2023 IL App (3d) 190185-U, ¶ 105. In doing so, this court determined that the trial court erred in its calculation of fraud damages and for not awarding breach of contract damages, as they are different than fraud damages. *Id.* ¶¶ 98, 100. This court also concluded that piercing the corporate veil of Supermercado and La Hacienda was appropriate, such that an award against Jaime, personally, was proper under the circumstances of this case. *Id.* ¶¶ 102-03. We remanded the matter for the circuit court to make specific findings as to Jaime's "breaches of contract and determine the appropriate measure of contract damages related thereto (shortages of base rent, additional rent, holdover rent, late fees, and security deposits to be returned by [Jaime])." *Id.* ¶ 105. We also instructed the court to reevaluate the proper measure of damages regarding the

fraud claim "and make findings based on the evidence (considering funds actually received by [Jaime] from the unauthorized fraudulent leases minus the rents [Jaime] paid to [Nomanbhoy] for base rent and additional rent for those spaces during the relevant time period)." *Id.* This court also specifically stated that Nomanbhoy could not be awarded contract damages that he claimed for a breach of the option and option addendum for unpaid additional rent of other tenants because the option terminated. *Id.* ¶ 104. This court also noted that Nomanbhoy had obtained possession of at least one of the rental spaces, apparently Supermercado, but did not indicate an effort to mitigate damages. *Id.* ¶ 97. This court did not note any error in the calculation of late fees that had been presented to the trial court through Exhibit 110A.

¶ 13        On remand, the court ordered the parties to file proposed findings of fact and a proposed order. The parties submitted their proposed findings and orders along with arguments in support thereof and in response to the opposing party's proposed order. These filings contained substantially the same or similar arguments as presented on appeal. Ultimately, the court adopted Nomanbhoy's proposed order. The proposed order contained damage calculations based upon exhibit 110, which was not admitted into evidence, although it contained substantially similar calculations to exhibit 110A, which was admitted into evidence. However, exhibit 110 lacked any calculations for late rent.

¶ 14        The court's order found that Jaime breached the Supermercado lease in the amount of $11,167.23, due to his failure to pay base rent, additional rent, and holdover rent from the start of the lease until possession of the premises was returned to Nomanbhoy on November 17, 2016. The court also awarded late fees in regard to Supermercado in the amount of $56,971.15. This number was calculated by taking 5% of the amount due (the lease's late fee provision provided for a charge of 5% of the late amount) and multiplying it by the number of months the amount

7

was late. For example, the court calculated that there was $6,700.34 in late fees for 2018 because the late amount was $11,167.23 (11,167.23 x .05 = 558.3615 x 12 months = 6,700.338). The court found that Jaime breached the La Hacienda lease in the amount of $84,782.52 due to his failure to pay base rent, additional rent, and holdover rent from the start of the lease until possession of the premises was returned to Nomanbhoy on March 31, 2019. As exhibit 110 only showed the amounts paid and due through March 2018, the court used the amounts for the first three months of 2018 to extrapolate the damages through March 2019. Specifically, the court multiplied the amounts due and paid for the first three months of 2018 by four to come to a total amount due for 2018. The court also used the amounts for the first three months of 2018 as the amounts for the first three months of 2019. The court awarded late fees relating to La Hacienda in the amount of $351,202.46. This number was calculated in the same manner as the late fees for Supermercado. Additionally, the court found that Nomanbhoy suffered damages in the amount of $7,800 due to Jaime's retention of security deposits. In total, the court awarded $511,923.35 in damages for breach of contract relating to the Supermercado and La Hacienda leases.

¶ 15        The court also awarded damages in the amount of $86,036 for fraud. The court found that as to the fraudulent sublease with sublessor Shalash for the Supermercado property, Jaime received $80,000 but he paid Nomanbhoy $82,126.98, such that Nomanbhoy suffered no damage. As to the fraudulent sublease with sublessor Jasso for the La Hacienda property, the court found that Jasso leased the space for 20 months between June 2014 and January 2016 at $6,000 per month. The court used the January 2016 date because it found that sublessor Duffy started leasing the same property in February 2016, so it concluded Jasso vacated the property in January 2016. The court calculated the amount Jaime received from Jasso as $120,000. The court

also found that Jaime fraudulently subleased the La Hacienda property to sublessor Duffy in the amount of $6,500 per month, plus a $6,500 security deposit and that Duffy paid 11 months of rent from February 2016 through January 2017. The court found the total amount paid by Duffy was $78,000. The court concluded that Jaime received a total of $198,000 from the fraudulent leases of the La Hacienda property. During the same time period as those leases, Jaime paid Nomanbhoy a total of $111,964 for the La Hacienda property. The court concluded that the amount Jaime received ($198,000) minus the amount he paid ($111,964) was $86,036. That is the amount of damage Nomanbhoy suffered, for which Jaime was liable.

¶ 16    The court found that the damages for breach of fiduciary duty were subsumed in the fraudulent conduct, such that an award under both theories would result in a double recovery. As such, the court awarded no damages for breach of fiduciary duty. The court also made clear that the corporate veil was pierced in this matter. Lastly, the court stated that it was undisputed that Nomanbhoy collected $26,465.42 pursuant to a wage deduction order. Thus, Jaime was entitled to a credit for that amount. The court credited $22,657.50 for the contract damages and $3,807.92 for the fraud damages. The court entered judgment in favor of Nomanbhoy and against Jaime for $489,265.85 ($511,923.35 owed, minus the credit of $22,657.50) in breach of contract damages and $82,228.08 ($86,036 owed, minus the credit of $3,807.92) in fraud damages.

¶ 17    Jaime filed a motion to reconsider. Jaime presented various arguments, including that the court could not base its order on the non-admitted exhibit 110. The court denied the motion to reconsider. In doing so, the court specifically stated that "[t]he existence, or lack of, of Ex 110 makes no difference to the court's conclusions." Jaime appeals.

¶ 18                                    II. ANALYSIS

¶ 19         On appeal, Jaime challenges the court's award of contract and fraud damages. The determination of damages by a trial court sitting without a jury will not be set aside unless it is manifestly erroneous. *First National Bank & Trust Co. of Evanston v. J.P. Schermerhorn & Co., Inc.*, 192 Ill. App. 3d 1057, 1062 (1989). Absolute certainty is not required for an award of damages. *Id.* Rather, all that is required is an adequate basis in the record for the court's determination. *Id.* Some of Jaime's contentions of error concern questions of law, such as contract interpretation, which we review *de novo*. See *In re Marriage of Velasquez*, 295 Ill. App. 3d 350, 356 (1998).

¶ 20         Jaime argues that he cannot be liable for any contract damages for La Hacienda because he was released from any such liability when Nomanbhoy waived any right to contract damages against La Hacienda by entering into an agreed order in the separate eviction action against La Hacienda. Jamie argues that although an alter ego can be held liable for an entity, if the entity is not liable there is no need to pierce the corporate veil to pursue waived damages. He further argues that he was a co-obligor with La Hacienda, and since Nomanbhoy agreed to an unqualified release of La Hacienda, he was released as well.

¶ 21         First, we do not consider Jaime a co-obligor with La Hacienda, as he was only found liable because the corporate veil was pierced. Although he signed the addendums in his own name, without indication that it was on behalf of La Hacienda and Supermercado, there also was no indication that he signed it as a co-obligor. This is supported by the fact that this court previously utilized this fact in determining that the corporate veil should be pierced, rather than simply finding him liable as a co-obligor. See *Jaime*, 2023 IL App (3d) 190185-U, ¶ 103. The addendums did not indicate that Jaime was to be personally liable for the obligations of

10

La Hacienda or Supermercado and the addendums indicated they were for the leases between Nomanbhoy and La Hacienda/Supermercado. Therefore, his argument as to the liability of a co-obligor fails.

¶ 22    Next, his argument is, in essence, that we should allow him, the corporate shareholder, to pierce the corporate veil to shield himself from liability. However, our courts have espoused the view that the corporate shield should not be pierced for the benefit of the corporation or its shareholders. See *Forsythe v. Clark USA, Inc.*, 224 Ill. 2d 274, 297 (2007) (noting that "Illinois courts have consistently expressed reluctance for allowing" a corporation or its shareholders to pierce their own corporate veil in order to avoid liability); *In re Rehabilitation of Centaur Insurance Co.*, 158 Ill. 2d 166, 173-74 (1994) (approving the principle that piercing must never be made in favor of a corporation or its shareholders); *Trossman v. Philipsborn*, 373 Ill. App. 3d 1020, 1052 (2007) ("The repudiation by our supreme court of reverse piercing as acceptable application of the piercing of the corporate veil doctrine was vigorously reaffirmed by our supreme court in its recent decision in *Forsythe*."). We see no reason to deviate from this view in this matter. Thus, Jaime's arguments fail, and he was properly held liable for contract damages for La Hacienda.

¶ 23    Jaime also argues that the circuit court erred in its assessment of late fees. Specifically, Jaime argues that the late fee provision, which the court interpreted as allowing a 60% per annum charge for late lease payments (which resulted in an award by the court of $408,173.61 in late fees for non-payment of $95,949.75 in rent), was an unenforceable penalty clause. Jamie also notes that at trial, Nomanbhoy only sought a one-time monthly charge of $50 per late month, totaling $3,600 for both La Hacienda and Supermercado. Nomanbhoy argues that the

11

monthly charge of 5% was proper and that, in the alternative, the court should impose a one-time late fee of 5% on the unpaid rent, holdover rent, and additional rent.

¶ 24    "A lease may provide for a late charge to be added to the rent if rent is not timely paid, but the late charge must be reasonable to be enforceable." *Mufaddal Real Estate Fund, LLC v. Vara School Professionals, Inc.*, 2024 IL App (3d) 220499, ¶ 48. However, we need not decide if the late fees, as awarded by the court, are reasonable.

¶ 25    Here, Nomanbhoy's request for late fees upon remand was completely different than the late fees that Nomanbhoy presented evidence of, and requested, at trial. At trial, rather than rely on the 5% provision and calculate a cumulative late fee, Nomanbhoy requested late fees consisting of a one-time monthly charge of $50, which was also provided for in the lease. Interestingly, relying on the one-time monthly charge of $50, Nomanbhoy's exhibit 110A showed a total late fee amount of $3,600 for both La Hacienda and Supermercado, yet on remand he sought, and was awarded, $408,173.61 in late fees. Nomanbhoy testified at trial that the exhibit, Exhibit 110A, was an ongoing spreadsheet he maintained for rent, additional rent, and other amounts due. Following trial, in his closing argument, Nomanbhoy argued that he recorded all payments received from tenants, all common expenses, and all rent owed, including late fees and cited to Exhibit 110A. Additionally, when the matter was appealed the first time, the only calculation of late fees in evidence and the only amount of late fees requested was $3,600 based upon the one-time charge of $50 each month Jaime was late with a payment for Supermercado or La Hacienda. This court did not note any error with this calculation in the prior appeal. See generally *Jaime*, 2023 IL App (3d) 190185-U. This court did not instruct the lower court to recalculate late fees or utilize a different method of calculating late fees than the method

presented, and argued for, by Nomanbhoy at trial. *Id.* Based on the foregoing we conclude that the damage award for late fees should be reduced to a total of $3,600.

¶ 26 Additionally, as an aside, we note there is a lack of evidence and findings regarding the sum late/due and owing each month which renders the calculations of late fees unreliable. See *First National Bank & Trust Co. of Evanston*, 192 Ill. App. 3d at 1062 (requiring an adequate basis in the record to support a court's damages determination). As an example, for Supermercado for 2014, the court's order calculated the late fee as $2,810.08. The equation to calculate this number is $8,028.80 (the total amount shown in Exhibit 110A as being short for 2014) x .05 (the 5% late charge) = 401.44 x 7 (months) = 2810.08. The first month that rent and additional rent were due was June of 2014, hence the use of 7 months to calculate the total late fees for 2014. However, it is not possible that Jaime was late by $8,028.80 the first month rent and additional rent were due. This is because his rent was $2,000 per month and the additional rent per month, using Nomanbhoy's calculation of total additional rent for 2014 of $20,368.80, would be 2,909.83 ($20,368.80/7 months). As such, even if Jaime paid all of the rent/additional rent late, he would only have been 4,909.83 late for the month of June 2014, not $8,028.80. Similarly for La Hacienda for 2014, the court's order calculated the total late fee as $4,668.58 ($13,338.80 (total amount short for 2014) x .05 = 666.94 x 7 = 4,668.58). However, the total amount of rent and additional rent due for June 2014 would have been the same as Supermercado according to exhibit 110A, $4,909.83, which, again, would be the total amount Jaime could have possibly been late for June 2014. Thus, the court's use of the total amount short over all of 2014 to calculate a late fee amount for each month in 2014 was incorrect and resulted in an erroneous calculation of total late fees. These examples show why it was necessary to have evidence of the total amount late for each month, rather than a total sum that Jaime was short for the entire year,

13

to accurately calculate the late fees utilizing the 5% late fee provision of the lease. As the court's calculations of late fees was erroneous we would not be able to affirm the court's award of late fees even if we were not reducing them to the $3,600 requested at trial. Moreover, as there is no evidence as to how much Jaime was late paying each month, this court would not be able to recalculate the late fee award utilizing the 5% provision.[1] Notably, the lack of evidence in this regard could be explained by the fact that at trial Nomanbhoy only requested late fees consisting of the one-time monthly charge of $50.

¶ 27    In sum, we adopt Nomanbhoy's own calculation of late fees presented at trial through exhibit 110A and reduce the award of late fees in this matter to a total of $3,600 for both La Hacienda and Supermercado. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). This decision is based on the facts that: (1) at trial Nomanbhoy requested and presented evidence of late fees only in the amount of $3,600 and (2) in the prior appeal this court did not note any error in the late fee calculation presented at trial or specifically instruct the court to recalculate late fees. Additionally, this decision recognizes that the court erred in its late fee calculation and there is not an adequate basis in the record to correctly calculate the late fees utilizing the 5% provision (*i.e.*, evidence of how much was late each month for both Supermercado and La Hacienda).

¶ 28    Jaime argues that the court erred by speculating funds were received by him in its determination of the fraud damages. Specifically, Jaime argues that imputing actual receipt of

---

[1]We note that Exhibit 127A provided evidence as to what was paid for Supermercado and La Hacienda for each month through June 2018. However, this document does not indicate when payment was received and thus does not reflect if a payment was late. Further, while it may be possible to utilize other documents to calculate generally how much should have been paid this still would not necessarily give the court an accurate picture as to what amount if any was late, especially considering there was testimony regarding agreements by Nomanbhoy to accept a specific sum as additional rent for a period of time. Thus, the court would not be able to accurately calculate how much was due each month simply based of the total additional rent due as shown on exhibit 110A. For example, although there was an amount that Jaime was short paying in 2014, there may not have been any late fees due because of the agreements regarding how much in additional rent was acceptable. This could explain why, in Exhibit 110A, Nomanbhoy did not indicate there were any late fees for 2014.

14

funds based only upon a lease provision is speculative and conjecture, such that the award of damages is erroneous. However, in the argument of his opening brief, Jaime utterly fails to specify what damages he is contesting, the lease or leases at issue, or even the amount he believes is speculative. Further, he fails to cite to the record to support any of his vague arguments in this regard. As such, we consider this argument forfeited, as he may not raise arguments for the first time in his reply brief, and we decline to address the issue on the merits. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (providing that argument must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on" and that "[p]oints not argued are forfeited and shall not be raised in the reply brief"); *People v. Edwards*, 2012 IL App (1st) 091651, ¶ 29 ("A reviewing court is entitled to have issues clearly defined with *** cohesive arguments presented; this court is not a repository into which an appellant may foist the burden of argument and research; it is neither the function nor the obligation of this court to act as an advocate or search the record for error.").

¶ 29        Jaime further argues that the award of contract damages was erroneous as a matter of law. In this regard, he raises three arguments: (1) that certain damages assessed were unsupported by the leases, including the 2013 taxes and other charges included as additional rent; (2) that holdover rent does not apply; and (3) that the extrapolation of damages was improper.

¶ 30        Regarding the 2013 taxes, Jaime argues that as the addendum to the lease provided that the entities were to pay 28% of the current year property tax bill, he was not to be charged for the 2013 tax bill because the addendum was executed in 2014. However, the addendum stated the "Tenant shall pay 28% of the current year property tax *bill*." (Emphasis added.) The tax bill in 2014 would have been for 2013 taxes. As such, Nomanbhoy could properly charge the 2013 taxes to the tenants. Although Jaime argues that Nomanbhoy violated the addendum by requiring

15

that the tenants pay the entire year bill in 7 months instead of 12 months as required by the addendum, it does not change the fact that the entire bill was owed, such that it does not change the overall amount owed by either La Hacienda or Supermercado. Therefore, we conclude there were no improper amounts included in damages by the court in this regard.

¶ 31 Jaime also argues that the amount of additional rent, as calculated by Nomanbhoy, was incorrect because the addendums to the leases required additional rent payments from Supermercado and La Hacienda of $1,600 and $1,810, respectively. However, the addendums only estimated additional rent at those amounts rather than definitively setting it. Nomanbhoy's exhibit 110A, which was admitted into evidence, showed the actual total amount of additional rent due. Therefore, any arguments based on calculations with these amounts necessarily fail. Nevertheless, we do agree with Jaime's contention that exhibit 110A incorrectly calculated 28% of the total additional rent owed by both Supermercado and La Hacienda for 2014. Specifically, exhibit 110A shows the total additional rent, comprised of insurance and taxes, as $71,290.80. It also shows Supermercado and La Hacienda's 28% portion of that amount as $20,368.80 per entity. However, 28% of $71,290.80 is actually $19,961.42, as argued by Jaime. This resulted in both Supermercado and La Hacienda being overcharged by $407.38. As such, we reduce the damage award against Jaime by a total of $814.76. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994).

¶ 32 Jaime further argues that addendum #2 to the leases did not allow expenses other than taxes and insurance to be included in the calculation of additional rent and that in 2016 there was a total of $7,629 in other charges (beyond taxes and insurance), inappropriately considered by the court in adopting Nomanbhoy's calculations, for which La Hacienda and Supermercado were not responsible. This argument again concerns the entries in exhibit 110A, which shows various entries totaling $7,629 included in the additional rent calculation for 2016. Although Jaime does

16

not identify the amounts comprising the $7,629, a review of exhibit 110A shows that the number is comprised of $4,279, $1,750, and $1,600 for the expenses noted as "attorney for tax reduction," "fire alarm panel," and "landscaping/snow/maintenance/other," respectively. Notably, although addendum #2 to the leases only specifically provides for additional rent for taxes and insurance, it also stated that Supermercado and La Hacienda were still required to pay for items numbered 1-6 in addendum #1. Items 1-6 all relate to maintenance, common areas, common area bills, and repairs. Thus, it is clear that the charges for "attorney for tax reduction" are not included therein, and were thus improperly included in the additional rent calculation. As La Hacienda and Supermercado were both responsible for 28% of the total additional rent amount, they were both overcharged $1,198.12 (4,279 x .28). Thus, we reduce the contractual damage award by a total of $2,396.24. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). However, the expenses related to the fire alarm panel and maintenance are either included, or arguably included, within items 1-6 that Supermercado and La Hacienda were responsible for paying. As Jaime failed to make any argument as to why those amounts were improper, and on their face they are at least arguably proper, we affirm the inclusion of those amounts in the additional rent calculation.

¶ 33    Regarding holdover rent, Jaime argues that it was not applicable in this matter because the lease only provided for holdover rent when the holdover was with the consent of Nomanbhoy. Jaime argues that Nomanbhoy did not consent to the holdover, as demonstrated by Nomanbhoy's "Amended Motion to Modify the previous Court Order that provided that no existing lease could be altered or cancelled ***. Nomanbhoy requested the ability to commence eviction proceedings." We conclude that the award of holdover rent was proper, as the record shows that Nomanbhoy agreed to the order that no existing lease could be altered or cancelled.

17

Thus, he consented to the holdovers by La Hacienda and Supermercado. Further, as no lease could be altered or cancelled, the holdover provisions of the leases remained in effect when the expiration date of the leases passed and La Hacienda and Supermercado remained in possession of the premises. Therefore, they were required to pay 1 ½ times the amount of monthly rent as required by the holdover provision, and the award of holdover rent was proper.

¶ 34　　　　　　Lastly, Jaime argues that the court's extrapolation of damages for rent owed by La Hacienda for 2018 and 2019 was improper speculation. While not set forth concisely by Jaime in his argument section, this argument applies to the court's use of Nomanbhoy's exhibit 110 (which notably was not admitted into evidence at trial),[2] and only included damage calculations through March 2018. The court used the information in exhibit 110 to extrapolate how much was owed by La Hacienda for the remainder of 2018 and the first three months of 2019. The court used the amounts due and paid for base rent, holdover rent, and additional rent through March 2018 and multiplied by four to determine the entire amount of damages for 2018. It also used the same amounts shown through March 2018 to calculate the damages for the first three months of 2019. As to this extrapolation by the court, Jaime specifically argues that there was no testimony presented as to the amounts he actually paid or owed after June 2018. Additionally, he argues there was no evidence, such as bank statements, showing amounts received or expenses claimed after June 2018. "Absolute certainty about the amount of damage is not necessary to justify a recovery if damage is shown, but damages may not be predicated on 'mere speculation, hypothesis, conjecture or whim.' " *City of Chicago v. Michigan Beach Housing Cooperative*, 297 Ill. App. 3d 317, 323 (1998) (quoting *In re Application of Busse*, 124

---

[2]Exhibit 110 only included the numbers through March 2018 and was not admitted at trial. Instead, exhibit 110A was admitted and it included the numbers through June 2018. As exhibit 110A was the properly admitted evidence at trial, we base our analysis and any change in damages on that document.

Ill. App. 3d 433, 438-39 (1984)). Here, the amount owed would not be pure speculation as it would be based upon the lease and the amount of additional rent due, particularly for 2018, as there was evidence regarding that amount through June of 2018. However, we conclude that it is simply too speculative to extrapolate how much Jaime may or may not have paid to Nomanbhoy after June 2018. Without speculating, we are unable to determine how much Jaime paid. There is simply no way to determine what, if any damages, Nomanbhoy incurred subsequent to June 2018. As such, we reduce the contractual damages for La Hacienda from $84,782.52 to $55,221.42, which is based upon exhibit 110A. See Ill. S. Ct. R. 366(a)(5) (eff. Feb. 1, 1994). This amount does not include the late fees, as provided in exhibit 110A, as those fees have been addressed separately in this order.

¶ 35        In sum, we are affirming the contractual damages awarded, as modified herein, and affirming the fraud damages awarded. The following is a summary of the damages awarded, subtracting the reductions noted herein. The contractual damages, less late fees, amounted to $11,167.23 for Supermercado and $55,221.42 for La Hacienda, for a total of $66,388.65. However, we must subtract $814.76 for the overcharge of additional rent, based upon a miscalculation as noted in paragraph 31 *supra*, and $2,396.24 for the improperly included expense as noted in paragraph 32 *supra*, which equals $63,177.65. Late fees are reduced to $3,600 and adding those fees, the amount of contractual damages is $66,777.65. Additionally, the court awarded $7,800 for deposits retained by Jaime, and which amount was not challenged on appeal.[3] Adding that to the rest of the contract damages equals a total amount of all contractual damages of $74,577.65. The total award of fraud damages was $86,036. Adding the

[3]We recognize Jaime made a conclusory statement in his conclusion that Nomanbhoy had been compensated for any security deposits retained by Jaime through the overpayment of additional rent. However, Jaime did not provide any argument regarding the security deposits in the argument section of his brief and we do not consider this conclusory statement to be a proper challenge to the damage award.

fraud and contractual damages together, the total damage award is $160,613.65. However, it is undisputed that Nomanbhoy has collected $26,465.42, such that the total judgment amount owing is $134,148.23.

¶ 36                                     III. CONCLUSION

¶ 37            The judgment of the circuit court of Will County is affirmed as modified.

¶ 38            Affirmed as modified.